(778 P.2d 370)

No. 63,062

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Plaintiff/Appellee*, v. JAMES A. CUMMINGS, *Defendant*; CLARENCE VEST and CHARLES C. PINNELL, *Defendants/Third-Party Plaintiffs*; and LISA VEST, ANGIE VEST, and VIVIAN VEST PINNELL, *Defendants/Third-Party Plaintiffs/Appellants*, v. CARLENE G. PURCELL, *Third-Party Defendant*.

Petition for review denied September 28, 1989.

Opinion filed July 28, 1989.

*Michael L. Hodges*, of Mission, for the appellants.

*Monti L. Belot*, of Hall, Levy, Lively, DeVore, Belot & Bell, of Coffeyville, for the appellee.

Before ABBOTT, C.J., RULON and LEWIS, JJ.

LEWIS, J.: This appeal is from a decision holding that appellants Lisa Vest, Angie Vest, and Vivian Vest Pinnell were not entitled to uninsured or underinsured motorist coverage under their insurance policy.

The decision by the trial court is based on facts stipulated to by the parties. The facts are not particularly complicated and indicate that on February 4, 1985, a collision occurred between a vehicle owned by Vivian Vest Pinnell and driven by Charles Pinnell, in which Lisa Vest, Angie Vest, and Bradley Vest were occupants, and a vehicle driven by Carlene Purcell and owned by James Cummings, which shall be referred to in this opinion as the offending vehicle. As a result of the collision, Bradley Vest was killed and the other occupants of the Pinnell vehicle were seriously injured. The parties stipulated that the accident was 50% the fault of Purcell in operating the offending vehicle, and 50% the fault of Cummings, based upon his negligent entrustment of the vehicle to Purcell.

At the time of the accident, Purcell was insured by a State Farm Mutual Automobile Insurance Company policy owned by her parents, which provided liability coverage of $50,000 per person and $100,000 per accident. Cummings had no liability insurance and no coverage of any kind available for recovery by the injured parties.

The parties stipulated that Lisa Vest, Angie Vest, Charles Pinnell, and Vivian Vest Pinnell were the insureds under an insurance policy owned by Vivian and also issued by State Farm. The policy provided liability coverage of $50,000 per person and $100,000 per accident as well as uninsured motorist coverage of $50,000 per person and $100,000 per accident.

The parties further stipulated that each of the injured parties had settled with Purcell's insurance carrier for amounts less than their actual damages because of inadequate policy limits.

The present action was initiated by State Farm essentially to determine whether it would be responsible to appellants for

uninsured or underinsured motorist coverage. Based on the stipulated facts, the trial court held there was no uninsured or underinsured motorist coverage available. This appeal followed.

There are two issues presented to this court on appeal: (1) Did the trial court err in ruling, as a matter of law, that the uninsured motorist provisions of the State Farm policy issued to Vivian Vest Pinnell did not provide coverage to the injured parties? (2) Did the trial court err in ruling that, as a matter of law, the underinsured provisions of the State Farm policy did not afford coverage to the injured parties?

## UNINSURED MOTORIST COVERAGE

Appellants argue they should have access to the uninsured motorist coverage afforded by their policy. While the driver of the offending vehicle may have been insured, the owner of that vehicle was not, and therefore the vehicle must be considered "uninsured" as to the owner. The issue to be determined is whether uninsured motorist coverage is available to the injured parties in this circumstance. This appears to be a question of first impression in Kansas, although, as will be pointed out, it has been considered by many of our sister courts.

The resolution of the issue presented involves the interpretation of the Kansas uninsured motorist statutes and of the insurance policy issued by State Farm which provides the uninsured motorist coverage. The basic Kansas uninsured motorist statute is found at K.S.A. 1988 Supp. 40-284. (Although the uninsured motorist statutes have been amended since the date of the accident, the statutory language pertinent to our decision has not been changed. K.S.A. 1988 Supp. 40-284 reads in pertinent part:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization."

The provisions of the statute quoted above are mandatory

insofar as they stipulate what insurance policies in this state must contain. The provisions of the statute are to be considered a part of every automobile policy in this state. *Simpson v. KFB Insurance Co., Inc.*, 209 Kan. 620, 626, 498 P.2d 71 (1972). Any attempt by an insurer to diminish the statutorily mandated uninsured motorist protection is void and contrary to public policy. *Clayton v. Alliance Mutual Casualty Co.*, 213 Kan. 84, 85, 515 P.2d 1115 (1973).

The policy itself must also be examined and, to the extent that it does not conflict with or attempt to diminish or omit the statutorily mandated coverage, it would be controlling as between the parties. We cannot permit any effort to dilute the statutory coverage from what is mandated and we should not enlarge it beyond the scope of that for which the parties contracted. "That the Legislature requires an uninsured motorists provision in every policy, unless expressly waived by the insured, added to the fact that a premium is collected for such protection, must result in a policyholder receiving what he has paid for on each policy, up to the amount of his damages." *Clayton*, 213 Kan. at 85.

In this case, the uninsured motorist provision of the State Farm insurance policy in effect read as follows:

"We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

"*Uninsured Motor Vehicle* — means:

"1. an 'uninsured' land motor vehicle, the ownership, maintenance or use of which is:

a. not insured or bonded for bodily injury liability at the time of the accident."

The question of whether uninsured motorist coverage is available when the driver of an offending vehicle is insured and the owner is not is one in which there exists a significant split of authority in this country. Some of those authorities are reviewed in an annotation in 24 A.L.R.4th 63.

Our research has shown that in the states of Washington, Missouri, and Florida (although Florida has decisions which apparently hold both ways) a vehicle is considered to be "uninsured" within the meaning of the uninsured motorist clause where the owner of that vehicle has no insurance even though

the individual driving the vehicle at the time of the accident is fully insured. Cases using this rationale include: *Allstate Insurance Company v. Chastain*, 251 So. 2d 354 (Fla. Dist. App. 1971); *Heafner v. Safeco Nat. Ins. Co., Etc.*, 613 S.W.2d 478 (Mo. App. 1981), 24 A.L.R.4th 58; *Finney v. Farmers Insurance*, 92 Wash. 2d 748, 600 P.2d 1272 (1979). However, we do not consider the rationale employed in these cases compatible with our Kansas statutes and decline to adopt it.

The majority view in this country, which we adopt in the present case, is that a vehicle of which either the owner or driver is covered by minimum insurance coverage is not "uninsured" even though one of those persons has no insurance. This view is followed by the states of Alaska, Florida, Michigan, New York, Rhode Island, Tennessee, and Arizona. See *Stordahl v. Government Emp. Ins. Co.*, 564 P.2d 63 (Alaska 1977); *Evenchik v. State Farm Ins. Co.*, 139 Ariz. 453, 679 P.2d 99 (Ct. App. 1984); *Allstate Insurance Company v. Pesqueria*, 19 Ariz. App. 528, 508 P.2d 1172 (1973); *General Acc. Fire & Life Assur., Etc. v. Means*, 362 So. 2d 135 (Fla. Dist. App. 1978); *Milling v. State Farm Fire and Casualty Company*, 333 So. 2d 511 (Fla. Dist. App. 1976); *Gordon v. Phoenix Insurance Company*, 242 So. 2d 485 (Fla. Dist. App. 1970); *Mtr. of Allstate Ins. Co. (Smith)*, 26 Misc. 2d 859, 207 N.Y.S.2d 645 (1960); *Fielder v. Amica Mutual Ins. Co.*, 119 R.I. 416, 378 A.2d 1386 (1977); *Mathis v. Stacy*, 606 S.W.2d 290 (Tenn. App. 1980).

Illustrative of the majority view is a decision by the Michigan Court of Appeals in *Citizens Ins. Co. v. Povey*, 114 Mich. App. 395, 319 N.W.2d 341 (1982). The court states its rationale in the following manner:

"Defendant argues that since one of the tortfeasors, here the owner of the automobile, was uninsured there should be coverage under the uninsured motorist provisions of the policy with respect to defendant's claim against that tortfeasor. In so arguing, however, she misreads the clear wording of the policy. The policy provides that the uninsured benefits are payable if the *vehicle* is uninsured, not if one of the tortfeasors is uninsured. The vehicle, however, is not an 'uninsured highway vehicle', as that term is defined in the contract, if *any* person legally responsible for the use of the vehicle is insured in the manner required by the contract even if another person who is also legally responsible for the use of the vehicle is not insured. In other words, even if the owner of the vehicle had no insurance herself at the time of the accident, she was nevertheless the owner of an 'insured highway vehicle' when the vehicle was being used or operated by an insured driver.

"Nor do we find any merit in defendant's assertion that denying her the right to recover uninsured motorist benefits on her claim against the uninsured owner would 'defeat the reasonable expectations of the insured and permit the insurer to escape payment rendering the coverage illusory'. From the definition of an 'uninsured highway vehicle' in the policy it is clear that the purpose of the coverage is to provide the insured with benefits at least equal in amount to the amounts of insurance specified in the financial responsibility law. If the vehicle is insured in that amount, it is not an uninsured vehicle. No uninsured motorist benefits would be payable for injuries sustained in an accident making the owner or operator of such a vehicle liable to the insured. The expectation of the policyholder, therefore, is only that she will receive benefits at least equal to those specified in the financial responsibility law and not that she will always be compensated fully for whatever injuries she may sustain in an accident.

"In this case the reasonable expectations of the defendant policyholder were not defeated. She was paid the policy limit amount by the insurer of the driver of the automobile." *Citizens Ins. Co. v. Povey*, 114 Mich. App. at 397-98.

The interpretation of the Michigan court is certainly consistent with the policy language in the case at bar. In this policy, an uninsured vehicle is one where the ownership, maintenance, or use is "not insured or bonded for bodily injury liability at the time of the accident." Since Purcell was covered by a liability insurance policy, it follows that the vehicle itself was also covered and was not an "uninsured vehicle" within the meaning of the policy.

We are persuaded that the majority view is consistent with what we perceive to be the legislative intent in enacting the uninsured motorist law in Kansas. We believe that the purpose of the Kansas uninsured motorist law was and is to provide each user of the streets, roads, and highways of this state certain minimum insurance benefits, and that it is only those minimum benefits which are contemplated by the legislature when it enacted this law. As a result, in a situation where those minimum benefits are available from the driver or the owner of the offending vehicle, the statute is satisfied. If one seeks more than the minimum coverage, it can be obtained through the use of "underinsured coverage," which can be elevated to higher levels through voluntarily increasing the basic liability coverage on one's own vehicle. As pointed out earlier, we are only concerned with seeing that the minimum requirements are enforced. We have concluded that, under the facts of this case, the minimum requirements were made available to the injured parties and the intent and purpose of the uninsured motorist statutes have been fully complied with.

We note that State Farm has cited to the Kansas Supreme Court's decision in *Hilyard v. Estate of Clearwater*, 240 Kan. 362, 729 P.2d 1195 (1986), arguing that there is no uninsured motorist coverage where the driver of the vehicle has insurance but the owner does not. We disagree with State Farm as to the meaning and effect of the *Hilyard* decision. In *Hilyard*, minor children were injured in an accident wherein their mother was the driver of the vehicle. At that time, there was a household exclusion clause in the automobile policy excluding liability for bodily injury to any family member of the insured residing in the same household as the insured. The injured children sought access to the uninsured motorist provision of the policy, arguing that, since the insurance of their mother was unavailable to them, she became essentially an "uninsured motorist" and they should be entitled to access to the uninsured motorist coverage. The Kansas Supreme Court denied access to the uninsured motorist coverage, stating that to do so would emasculate the household exclusion clause in the policy. We limit the holding in *Hilyard* to the facts of that case, and do not extend it to the facts of the case at bar, nor do we consider it as authority for our decision.

We must comment on one other Kansas decision which, on the surface, appears to be applicable and would mandate a result identical to the one we have reached. In the case of *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), the Kansas Supreme Court dealt with a homeowner's liability policy where there was a clause which excluded "ownership, maintenance, operation, [or] use . . . of . . . automobiles . . . while away from the premises" from coverage. In the *Upland Mutual* case, the injured parties sought to recover under the homeowner's liability policy of the father of the driver of the offending vehicle. The injured parties alleged that the father was guilty of negligent entrustment in allowing his son to drive the father's vehicle, and, as a result of that negligent entrustment, their injuries occurred. The insurer took the position that the parties suffered their injuries as a result of the negligent operation of the automobile by the son of the defendants and that, under the exclusion clause of the policy, there was no coverage for claims based upon negligence in the maintenance, operation, or use of an automobile. The Kansas Supreme Court, in holding that the exclusion did not apply, stated:

"In this case the action filed by the Forresters against the Noels was not based upon the 'ownership, maintenance, operation, use, loading or unloading of . . . automobiles', even though the immediate cause of the injury and death was Steven's operation of the automobile. The basis of the Forresters' action was the alleged negligence of the Noels in knowingly entrusting an automobile to a careless and reckless driver. The theory of liability upon which the petition was framed is well-recognized in Kansas. [Citations omitted.]

"Nowhere is it alleged in the Forresters' petition that the Noels are liable on the theory that they owned, maintained, operated or used the automobile or that the automobile was negligently driven by the Noels or their agent. The theory of the Forresters' damage action is not directly related to the 'ownership, maintenance, operation, use' of the vehicle." 214 Kan. at 150.

If we extended the reasoning in *Upland Mutual* to this case, it could be argued that, since the allegations against the owner of the offending vehicle are based upon negligent entrustment, there is no claim that the appellants sustained their injuries as a result of the ownership, maintenance, operation, or use of an automobile. Since it is only these uses which are covered by the uninsured motorist statutes, it necessarily follows that there would be no uninsured motorist coverage.

Although we could decide this case by extending the language of *Upland Mutual* to the facts of this case, we decline to do so. We do not believe the Supreme Court intended for its decision in *Upland Mutual* to apply to uninsured motorist cases, nor do we believe it applicable to cases which do not involve exclusion clauses under homeowner's liability policies.

After a careful review of the statute, the insurance policy, the prior decisions of Kansas courts, and the positions taken by courts of our sister states on this issue, we conclude that an offending vehicle is not to be considered as "uninsured" when the driver of that vehicle is covered by the requisite minimum liability coverage required by law, even though the owner of the vehicle is uninsured. Accordingly, we affirm the trial court's conclusion that uninsured motorist coverage is not available to the appellants in this case.

## UNDERINSURED MOTORIST COVERAGE

The appellants argue that, in the event this is not considered to be an "uninsured motorist" case, it should be considered an "underinsured motorist" case, and they should be given access to their underinsured motorist coverage.

We agree that the proper resort in a case of this nature would be to the underinsured motorist coverage provided by the policy

in question, but, unfortunately for appellants, that coverage has been exhausted and is no longer available.

There is no question but that the liability coverage in effect on the offending vehicle is insufficient to pay for the damage and loss sustained by appellants in the accident. That, however, does not make it in and of itself a proper case for resort to underinsured motorist coverage. K.S.A. 1988 Supp. 40-284(b) reads as follows:

"Any insured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided *by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.*" (Emphasis added.)

The statute in question is unambiguous and plainly indicates that the underinsured motorist coverage enables the insured to recover from his underinsured motorist carrier damages "to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." In other words, if the underinsured motorist coverage in the policy covering appellants exceeds the limits of the liability coverage in effect on the driver of the other vehicle, resort may be had to underinsured motorist coverage. In this case, however, both limits were the same.

In this state, the amount of the underinsured motorist coverage is determined by reference to the amount of the liability coverage in effect on the policy covering the injured party. By using this point of reference, an insured in this state can increase the amount of underinsured motorist coverage available by increasing his liability coverage and, consequently, paying a higher premium. This results in a situation in which the insured has purchased and the insurer is at risk for the amount of coverage for which they have bargained.

The injured parties in this case were insureds under a policy with liability limits of $50,000/$100,000 and, as a result, had underinsured motorist coverage available of $50,000/$100,000. The liability policy in effect on the offending vehicle had coverage of $50,000/$100,000 also, which equals the underinsured motorist coverage available to appellants. Since underinsured

motorist coverage is only available to the extent that it exceeds the limits of the bodily injury coverage carried by the driver of the other vehicle, under the facts of this case, underinsured motorist coverage is not available because it is identical to the bodily injury coverage on the offending vehicle and does not exceed that coverage.

In *Haas v. Freeman*, 236 Kan. 677, 683, 693 P.2d 1199 (1985), the Kansas Supreme Court, in discussing the procedure for invoking underinsured motorist coverage, stated:

> "When the litigant determines the opposing party's liability coverage is below the litigant's liability coverage as well as the amount of damages claimed, and he wishes to invoke the underinsured motorist clause of his insurance policy, he shall notify his insurance carrier in the manner prescribed in the insurance policy."

In determining whether underinsured motorist coverage is available, two steps must be satisfied: (1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage. In this case, step one cannot be satisfied. The liability coverage provided to the driver of the offending vehicle was not below appellants' liability coverage, but was equal to it. Both steps must be satisfied and, in the case of appellants only step two applies and no underinsured motorist coverage is available.

The result we reach in this case may appear harsh. The appellants cite cases from other jurisdictions to support their view. Suffice it to say, we are not persuaded that those decisions should have any effect in interpreting our Kansas statutes. In the case at bar, the minimum requirements dictated by the statute have been met, and for us to impose further liability would impose a risk upon the insurance carrier for which it has neither bargained nor been compensated. This we decline to do.

Affirmed.