(981 P.2d 767)

No. 79,573

JOAN COFFMAN JONES, *Appellant,* v. AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, *Appellee.*

Opinion filed June 11, 1999.

*Patricia L. Lear-Johnson* and *S. W. Longan, III*, of Longan & Associates, of Leawood, for appellant.

*Paul Hasty, Jr.*, and *Jason L. Bush*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee.

Before GERNON, P.J., ELLIOTT and KNUDSON, JJ.

GERNON, J.: Joan Coffman Jones appeals a summary judgment ruling in favor of Automobile Club Inter-Insurance Exchange (AAA). Jones sought a recovery for underinsured motorist damages.

Jones was a passenger in an automobile driven and owned by her son-in-law, Terry Burris. The Burris vehicle was struck from behind by an automobile driven by Alvin Barrett. No one disputes that Barrett was responsible for the collision and the injuries. Three other people were injured.

Barrett's liability insurance limited recovery to $25,000 per person and $50,000 per occurrence. Barrett's insurance paid $7,000 in damages to the passenger in his car, leaving $43,000 available under his $50,000 per occurrence limit for the occupants of the Burris car. Jones and the Burrises settled with Barrett's insurance for the remaining $43,000 and divided this amount among themselves. Jones received $7,826, while Terry Burris received $31,261 and Jones' daughter, Everetta Burris, received $3,913.

Jones then sought payment from AAA under her underinsured motorist policy, which had limits of $50,000 per person and $100,000 per occurrence. The parties agreed that Jones incurred $20,682.15 in damages as a result of the accident.

The trial court ruled that Jones had failed to qualify for underinsured motorist coverage because her damages were less than the per person coverage limit under Barrett's policy. Jones appeals.

The statute involved here that we are required to interpret is K.S.A. 40-284(b), which states:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the *limits* of the bodily

injury coverage carried by the owner or operator of the other motor vehicle." (Emphasis added.)

Both sides rely on *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989), for support. Jones argues that this court's decision in *Cummings* implies that the per occurrence liability limit determines when an insured can resort to underinsured motorist coverage. AAA, on the other hand, argues that *Cummings* based its two-part test on the per person liability limit.

*Cummings* established a two-part test for determining when underinsured motorist coverage is available. This test states that the tortfeasor's liability coverage must be less than the claimant's liability coverage and the claimant's damages must exceed the tortfeasor's liability coverage. 13 Kan. App. 2d at 639. The test does not establish whether the per occurrence or per person liability limit applies. Therefore, *Cummings* is not dispositive on this issue.

We must examine the legislative intent regarding K.S.A. 40-284(b).

The fundamental rule of statutory construction is that the intent of the legislature governs. *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 682, 847 P.2d 1292 (1993). The legislature's purpose in mandating that insurance companies offer underinsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility legislation and compulsory insurance legislation. *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 215, 824 P.2d 955 (1992).

Underinsured motorist coverage is intended to provide compensation for innocent persons suffering damages as a result of the wrongful conduct of negligent motorists who cannot be made to respond in damages and whose insurance is insufficient to pay the damages. 250 Kan. at 215. As remedial legislation, the uninsured and underinsured motorist statutes should be liberally construed to provide broad protection to the insured against all damages resulting from injuries sustained by the insured that were caused by an automobile accident and arose out of the ownership, maintenance, or use of the insured motor vehicle. 250 Kan. at 215.

When interpreting a statute, the court should give words in common usage their natural and ordinary meaning. *Kilner*, 252 Kan. at 682. The legislature did not specify the per person liability limit or the per occurrence liability limit in K.S.A. 40-284(b). Instead, the legislature used the word "limits," rather than "limit." By using the plural, the legislature referred to more than one limit. Accordingly, either the per person or the per occurrence limit may apply. Whether the per person or the per occurrence liability limit applies will depend on which limit impairs the insured's ability to receive compensation from the other motorist.

Here, four individuals were injured as a result of this single accident. Each of these individuals could not have received the full $25,000 available under Barrett's per person liability limit because his per occurrence liability limit was $50,000. A party unrelated to Jones settled with Barrett's insurance for $7,000 before Jones and the Burrises made a claim. Jones and the Burrises jointly settled with Barrett's insurance for the remaining $43,000. As family members, Jones and the Burrises decided to distribute the shared settlement among themselves. Jones received $7,826 from this settlement, while Terry Burris received $31,261 and Everetta Burris received $3,913.

The problem we see in this type of multiple individual injury and group settlement is that, without a determination factually of the extent of the actual damages of each of the injured, there could be a potentially collusive distribution of a settlement. Such a result should not be allowed and certainly is not intended by the legislature.

We remand this matter to the trial court for further findings regarding the actual damages to Terry Burris and Everetta Burris. Once those damages are determined, the district court is directed to determine each person's pro rata share of the $43,000 settlement. Jones' claim against AAA should be calculated as the difference between her pro rata share of the settlement and the total value of her damages.

Reversed and remanded.