No. 82,977

MANDI J. CASHMAN, a Minor By and Through ARNOLD D. CASHMAN, Her Natural Guardian and Next Friend, *Appellant,* v. MARGERY C. CHERRY, *Defendant,* AMERICAN FAMILY MUTUAL INSURANCE COMPANY, *Intervenor/Appellee.*

(13 P.3d 1265)

Opinion filed December 8, 2000.

*Dan Lykins,* of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, argued the cause and was on the brief for appellant.

*Steve R. Fabert,* of Fisher, Patterson, Saylor & Smith, L.L.P., of Topeka, argued the cause and was on the briefs for intervenor/appellee.

The opinion of the court was delivered by

Six, J.: This is an underinsured motorist (UIM) case arising from a settlement by three injured persons, all members of the same family. Mandi Cashman, a minor, through Arnold D. Cashman, her father and next friend, claims she is entitled to UIM coverage from American Family Mutual Insurance Co. (American Family), Intervenor. The district court and the Court of Appeals disagreed. We granted Mandi's petition for review to resolve a perceived conflict between two Court of Appeals opinions, *Jones v. Automobile Club Inter-Insurance Exchange,* 26 Kan. App. 2d 206, 981 P.2d 767, *rev. denied* 268 Kan. 887 (1999), and *State Farm Mut. Auto Ins. Co. v. Cummings,* 13 Kan. App. 2d 630, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989). Both the district court and the Court of Appeals relied on *Cummings* to deny Mandi UIM coverage.

Our jurisdiction results from granting the petition for review. K.S.A. 20-3018(b).

We reverse the Court of Appeals and the district court. *Jones* controls here and in similar factual situations involving a group settlement of closely linked injured persons such as, but not limited to, family members. *Jones* trumps *Cummings* in such factual situations. Mandi is entitled to UIM benefits. We remand for a determination of the amount.

## FACTS

On September 8, 1996, Mandi was involved in a two-car collision. Mandi's parents, Arnold, a passenger, and Donna, the driver, were also injured. The Cashman car was hit by a car driven by defendant Margery Cherry.

Cherry was insured by a Patrons Insurance Company (Patrons) automobile liability policy with limits of $50,000 per person and $100,000 per occurrence. The Cashmans each filed a lawsuit against Cherry. The district court: (1) apportioned fault 85% to Cherry and 15% to Donna, (2) awarded Mandi damages of $40,539.91 (after imposing a 15% reduction for her mother's fault; Mandi did not sue her mother), and (3) later, in a separate case,

awarded Arnold damages of $101,348.76, after a 15% fault reduction. Donna's damages were resolved by agreement. (The amount is not in the record.) The Cashmans agreed with Cherry and Patrons to settle for the $100,000 per occurrence policy limit. The settlement was apportioned by agreement $50,000 to Arnold, $25,000 to Donna, and $25,000 to Mandi. The intervenor, American Family, the Cashmans' automobile insurer, tendered a $100,000 substitute payment under K.S.A. 40-284(f). The Cashman's American Family policy had UIM limits of $100,000 per person and $300,000 per occurrence.

Mandi claimed she was entitled to $15,539.91 in UIM benefits under American Family's policy language. (The difference between the $25,000 she received in settlement from Patrons plus her medical bills and her damages awarded at trial.) The district court denied UIM benefits because Mandi's damages of $40,539.91 were not in excess of Cherry's $50,000 per person liability limit in Patron's policy.

The Court of Appeals affirmed in an unpublished opinion under Supreme Court Rule 7.042(d) (1999 Kan. Ct. R. Annot. 47).

## DISCUSSION

We first consider Mandi's contention that the UIM provision of her American Family policy provides greater coverage than that afforded by K.S.A. 40-284(b). The "greater coverage" issue was the only issue Mandi presented to the Court of Appeals. Mandi's arguments regarding American Family's UIM provision are difficult to follow. She appears to argue that the policy language allows her to collect UIM benefits even where her damages did not exceed the liability limits of Cherry's policy.

K.S.A. 40-284(b) provides.

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representatives to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

Mandi quotes from numerous policy provisions in an effort to support her contention. However, as American Family points out, Mandi fails to acknowledge that her policy contains terms conforming it to the terms mandated by K.S.A. 40-284. K.S.A. 40-284(b) makes the limits for the tortfeasor's liability coverage and the injured person's UIM coverage determinative of underinsured status. Mandi's UIM policy does the same. Mandi's policy language argument is not persuasive.

We next acknowledge the June 11, 1999, arrival of *Jones v. Automobile Club Inter-Insurance Exchange*, 26 Kan. App. 2d 206, onto the UIM scene. The district court, without the opportunity to consider the then nonexistent *Jones* opinion, denied Mandi's UIM claim on February 24, 1999. The Court of Appeals opinion here, filed December 23, 1999, does not mention *Jones.* In her amended petition for review, Mandi advances *Jones* as support for her $15,539.91 UIM claim.

American Family objects to our consideration of *Jones* here, observing that Mandi did not present her *Jones* argument below. In general, a new legal theory may not be asserted for the first time on appeal. *Jarboe v. Board of Sedgwick Co. Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997). However, exceptions to the general rule were also acknowledged in *Jarboe.* 262 Kan. at 622 (citing *Pierce v. Board of County Comm'rs*, 200 Kan. 74, Syl. ¶ 3, 434 P.2d 858 [1967]). Relying on the *Jarboe* and *Pierce* exceptions, we elect to consider Mandi's *Jones* argument.

Mandi's UIM coverage issue involves a question of law, over which we have unlimited review. See *Elliott v. Farm Bureau Ins. Co., Inc.*, 26 Kan. App. 2d 790, 793, 995 P.2d 885 (1999), *rev. denied* 269 Kan. 932 (2000).

We next turn to a review of *Cummings* and *Jones. Cummings* arose from a collision involving a car owned by Vivian Vest Pinnell insured by State Farm and driven by Charles Pinnell. Lisa Vest, Angie Vest, and Bradley Vest were passengers. The other car was driven by Charlene Purcell and owned by James Cummings. As a result of the collision, Bradley was killed and the others in the Pinnell car were seriously injured. The district court found that Lisa, Angie, and Vivian were not entitled to UM or UIM coverage.

*Cummings* noted that the injured persons were insureds under a State Farm policy with liability coverage of $50,000/$100,000 and as a result had UIM coverage of $50,000/$100,000. The offending Purcell vehicle also had liability coverage of $50,000/$100,000. *Cummings* established two prongs to determine whether UIM coverage is available: "(1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage." 13 Kan. App. 2d at 639. Under the *Cummings* facts the claimants' liability coverage did not exceed the tortfeasor's liability coverage; thus, no UIM coverage was available. 13 Kan. App. 2d at 639.

In the present case, the district court concluded that the second prong of the *Cummings* test was not satisfied (Mandi's damages did not exceed the "per person" limit of the tortfeasor's liability coverage). Thus, American Family's UIM coverage was not available.

*Jones* involves a settlement of injured persons, all members of a family group. Thus, the *Jones* family group facts are similar to *Cummings* and to the facts here. Joan Jones, a passenger, and others were injured when a car driven by Alvin Barrett struck the Jones car from behind. Barrett's automobile liability insurance limited recovery to $25,000 per person and $50,000 per occurrence. Barrett's insurance paid $7,000 to the passenger in his car, which left $43,000 available under the $50,000 per occurrence limit for the occupants of the car Jones was in. Jones, her daughter, and her son-in-law settled as a group for the remaining $43,000. The three family members divided the $43,000 among themselves. Jones received $7,826, her son-in-law $31,261, and her daughter $3,913.

The parties agreed that Jones suffered $20,682.15 in damages. Jones sued Automobile Club Inter-Insurance Exchange (AAA) under the UIM provisions of her policy. Her policy had UIM limits of $50,000 per person and $100,000 per occurrence. The district court concluded that Jones failed to qualify for UIM coverage under the second prong of *Cummings* because her damages ($20,682.15) were less than the $25,000 per person limit of Barrett's liability policy.

On appeal, the parties in *Jones* relied upon *Cummings* for support. Jones contended *Cummings* entitled her to the UIM per occurrence limit ($100,000). AAA countered by relying on the UIM per person limit ($50,000). The *Jones* court observed that while the two-prong test in *Cummings* was established to determine when UIM coverage is available, the test does *not* establish whether the per occurrence or per person liability limit applies. Thus, *Cummings* did not control the result in *Jones*. 26 Kan. App. 2d at 208.

*Jones* looked to the language of K.S.A. 40-284(b), noting that the legislature's purpose in mandating UIM coverage is to "fill the gap inherent in motor vehicle financial responsibility legislation and compulsory insurance legislation." K.S.A. 40-284(b) should be liberally construed in light of the legislative intent to compensate innocent persons damaged by others without sufficient insurance. 26 Kan. App. 2d at 208. We agree.

*Jones* observes that K.S.A. 40-284(b) refers to "limits," plural. *Jones* reasoned that the use of "limits" indicated that per person or per occurrence limits could be considered in determining whether a tortfeasor was underinsured. Whether the per person or the per occurrence liability limit applies will depend on which limit impairs the insured's ability to receive compensation from the other motorist. 26 Kan. App. 2d 206, Syl. ¶ 6. We agree. In *Jones*, there were three injured persons in the family group. Because of the per occurrence limit in the tortfeasor's policy of $50,000, each injured person could not receive a full $25,000 per person limit. The case was remanded for further findings on the actual damages sustained by the other two injured family members. The district court, after determining an actual damage amount for each injured family member, was directed to determine each family member's pro rata share of the $43,000 settlement. The third step was a mathematical calculation to determine Jones' claim against AAA. Her claim was the difference between her pro rata share of the $43,000 and her total damages of $20,682.12. 26 Kan. App. 2d at 209.

Here, the Cashmans' liability limits and, thus, their UIM limits under the American Family policy were $100,000 per person and

$300,000 per occurrence, which exceeded Cherry's liability limits of $50,000/$100,000. However, each of the injured persons here could not receive the full $50,000 per person liability limit due to the $100,000 per occurrence limit in Cherry's policy with Patrons.

American Family attempts to distinguish *Jones*. First, it argues *Jones* was based upon insurance policy language. We disagree. *Jones* focused on a K.S.A. 40-284(b) statutory interpretation, not on policy language. Second, American Family contends that a remand in Mandi's case would be impractical, if not impossible, because, unlike *Jones*, this case was decided on a stipulated record. However, American Family seems to ignore that a remand under *Jones* requires a finding of each family member's actual damages, a determination of the pro rata share of each from the $43,000 settlement, and a determination of the amount of UIM benefits available. Here, the district court has already determined Mandi's and Arnold's actual damages. The amount of Donna's damages are not known. American Family also asserts that *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 811 P.2d 1112 (1991), was: (1) not discussed in *Jones* and (2) did not interpret K.S.A. 40-284(b) in a manner consistent with *Jones*. In *Allied Mut. Ins. Co.*, State Farm Mutual Insurance Company (State Farm) sought to offset its $100,000 UIM limits by money paid on settlements or judgments by a second tortfeasor (other than the underinsured motorist). State Farm contended it should aggregate all recovery from tortfeasors and, thus, reduce its UIM obligation. We rejected this contention. We reasoned the mandated UIM coverage required a separate comparison of the liability limits of each tortfeasor to the limits of the UIM carrier. To the extent the State Farm policy permitted an offset against UIM benefits owed for the negligence of one tortfeasor for settlement payments by a second tortfeasor, the provision diluted K.S.A. 40-284 mandated coverage. 248 Kan. at 733. American Family's use of *Allied Mut. Ins. Co.* is misplaced. Both the facts and the issues differ from those in *Jones*.

Mandi argues that under *Jones*, she should be entitled to receive $15,539.91, which is the difference between her $25,000 share of the settlement and her total amount of damages determined at trial ($40,539.91). Mandi also has misread the holding in *Jones*. The

*Jones* court recognized the hazards of allowing a group of family members to distribute the settlement among themselves. 26 Kan. App. 2d at 209. *Jones* was remanded for a finding of the actual damages of the other two family members, Jones' son-in-law and her daughter.

The Cashmans, like the family members in *Jones,* distributed the total $100,000 settlement among themselves. We reverse and remand with instructions to determine under *Jones:* (1) Donna's actual damages, (2) the percentage Mandi's damages of $40,539.91 is to the total of Cashman family damages, and (3) Mandi's pro rata share in the $100,000 settlement by applying that percentage. We realize that although Donna is Mandi's mother, Donna is not a party here. Our focus is on judicial oversight in a damage determination. District judges will follow the teaching of *Jones* to insure that there has been no "potentially collusive" distribution of the settlement. 26 Kan. App. 2d at 209. Mandi's UIM claim against American Family should be the difference between her pro rata share of the $100,000 settlement and her damages of $40,539.91.

Reversed and remanded with instructions.