(49 P.3d 22)
No. 87,002

PETER O'DONOGHUE, ADMINISTRATOR OF THE ESTATE OF CHONG AE O'DONOGHUE, and SEAN O'DONOGHUE, HEIR AT LAW OF CHONG AE O'DONOGHUE, *Appellees/Cross-Appellants*, v. FARM BUREAU MUTUAL INSURANCE CO., INC., *Appellant/Cross-Appellee.*

Opinion filed April 26, 2002.

*Don D. Gribble, II,* and *Vince P. Wheeler,* of Hite, Fanning & Honeyman, L.L.P., of Wichita, for appellant/cross-appellee.

*Corlin J. Pratt* and *Terry L. Unruh,* of Grace, Unruh & Pratt, L.C., of Wichita, for appellees/cross-appellants.

Before JOHNSON, P.J., GERNON and MARQUARDT, JJ.

JOHNSON, J.: Farm Bureau Mutual Insurance Co., Inc. (Farm Bureau) appeals the district court's determination of the amount of underinsured motorist (UIM) benefits payable to its insured, Chong Ae O'Donoghue, deceased. Plaintiffs in this action are the estate administrator and the heir of Chong Ae O'Donoghue (collectively referred to as O'Donoghue). We affirm.

The facts are undisputed. In July 1999, O'Donoghue, a passenger in a vehicle driven by Sarah Brown, was killed in a single-car accident. There were two other passengers in the vehicle; one was also killed in the accident and the other was severely injured. Thus, there were three claimants against the driver's insurer, American Family Insurance Company (American Family).

Brown's American Family automobile insurance policy provided bodily injury liability limits of $50,000 per person and $100,000 per occurrence (50/100), *i.e.*, American Family would not pay any one person more than $50,000 and would not pay more than a total of $100,000 to compensate all of the persons injured in the same accident. Brown's coverage limits were insufficient to fully compensate all three claimants. The parties agreed to divide the total per occurrence monies available under the American Family policy as follows: the injured passenger would receive $50,000 and each of the decedents' estates would receive $25,000. Farm Bureau, as O'Donoghue's insurer, approved of the settlement with American Family as being a fair and reasonable distribution of Brown's liability limits.

O'Donoghue's Farm Bureau policy provided UIM coverage with limits of $100,000 per person and $300,000 per occurrence (100/300). The parties have agreed that O'Donoghue's damages exceeded $100,000. O'Donoghue made a claim under Farm Bureau's UIM coverage for $75,000, representing the $100,000 per person limit less the $25,000 recovery from American Family. Farm Bureau countered that its maximum liability to O'Donoghue was $50,000, computed by subtracting Brown's per person limit of $50,000 from O'Donoghue's per person limit of $100,000.

The estate filed a petition and a motion for partial summary judgment, asking the district court to declare $75,000 in UIM coverage available to O'Donoghue. The district court granted O'Donoghue's partial summary judgment, finding that $75,000 in UIM coverage was available, but the court denied O'Donoghue's motion for attorney fees under K.S.A. 40-256. The parties later agreed to a journal entry of judgment. Farm Bureau paid the uncontested amount of $50,000 to O'Donoghue, but appealed the

$75,000 judgment. O'Donoghue cross-appealed the denial of attorney fees.

*CALCULATION OF UIM BENEFITS*

As presented by the parties, the primary issue before the court is whether the amount of O'Donoghue's UIM coverage with Farm Bureau should be calculated by reducing her UIM per person limit by: (1) the per person limit of Brown's American Family liability coverage ($100,000 − $50,000 = $50,000); or (2) the amount of American Family's actual payment to O'Donoghue ($100,000 − $25,000 = $75,000). Because summary judgment was based on stipulated facts, the appellate court's standard of review is de novo. *Veatch v. Beck*, 252 Kan. 1081, 1082, 850 P.2d 923 (1993). The parties apparently agree that the policy language mirrors the applicable statute, and, therefore, the interpretation and application of the underinsured motorist statute, K.S.A. 40-284(b), is dispositive in this case. Interpretation of a statute is a question of law, and the appellate court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

K.S.A. 40-284(b) sets forth the basic requirements for UIM coverage:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

Farm Bureau cites to *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989), as authority for its proposed "limits-to-limits" rule, *i.e.*, deriving a maximum UIM obligation by deducting the tortfeasor's per person limit from the UIM per person limit. In *Cummings*, the tortfeasor's liability insurance had 50/100 limits. The injured occupants of the other vehicle were covered by the driver's State Farm policy, which likewise had UIM limits of 50/100. The four injured parties settled with the tortfeasor's insurer for less than

their actual damages and then demanded UIM benefits from State Farm to make up the difference.

Based on these stipulated facts, the district court found there was no UIM coverage available to the injured parties. The Court of Appeals agreed, holding:

"Since underinsured motorist coverage is only available to the extent that it exceeds the limits of the bodily injury coverage carried by the driver of the other vehicle, under the facts of this case, underinsured motorist coverage is not available because it is identical to the bodily injury coverage on the offending vehicle and does not exceed that coverage." 13 Kan. App. 2d at 638-39.

Thus, even though the injured parties had been unable to collect the full amount of their damages due to the tortfeasor's inadequate liability limits, no benefits were available because the UIM limits and the tortfeasor's liability limits were identical. In other words, the claimant had purchased inadequate UIM limits. The court concluded its opinion with a test to be applied in such cases. "In determining whether underinsured motorist coverage is available, two steps must be satisfied: (1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage." 13 Kan. App. 2d at 639.

O'Donoghue contends that the law stated in *Cummings* has been superceded by two recent cases involving multiple injury group settlements: *Jones v. Automobile Club Inter-Insurance Exchange,* 26 Kan. App. 2d 206, 981 P.2d 767, *rev. denied* 268 Kan. 847 (1999), and *Cashman v. Cherry,* 270 Kan. 295, 13 P.3d 1265 (2000). According to O'Donoghue, these cases clearly establish that O'Donoghue's UIM payment from Farm Bureau should be calculated by simply deducting the actual American Family payment without the necessity of comparing the per person limits of the two companies' policies.

The plaintiff in *Jones* was one of four persons injured in a vehicle that was struck by the tortfeasor's vehicle. The tortfeasor's bodily injury liability coverage had limits of $25,000 per person and $50,000 per occurrence (25/50). The tortfeasor's passenger collected $7,000, leaving $43,000 of the per occurrence limit remaining for Jones and the other three passengers in the struck vehicle.

The related parties agreed Jones' damages were $20,682.15 and that Jones' pro rata share of the $43,000 was $7,826.

Jones then turned to her UIM insurer, AAA, for payment. Jones' UIM coverage had 50/100 limits. The district court ruled that under the second prong of the *Cummings* test, Jones did not have a UIM claim because her damages ($20,682.15) were less than the tortfeasor's per person liability limit ($25,000).

The Court of Appeals reversed the district court, finding that the *Cummings* test did not specify whether the per person or per occurrence limit should be applied in determining whether the claimant's damages exceeded the tortfeasor's liability coverage. Thus, the court summarily opined, *Cummings* was not dispositive of the issue. 26 Kan. App. 2d at 208. Looking at the remedial nature of K.S.A. 40-284, the court determined that whether the per person or per occurrence limit applies will depend upon which limit impairs the insured's ability to receive full compensation from the tortfeasor. Because several people had been injured in the same accident, Jones' recovery from the tortfeasor was incomplete due to the tortfeasor's $50,000 per occurrence limit, rather than the $25,000 per person limit. 26 Kan. App. 2d at 209. Apparently, *Jones* was saying that if the total of the damages of all claimants against the tortfeasor was in excess of the tortfeasor's per occurrence limit, then regardless of the amount of the UIM claimant's individual damages, the second prong of *Cummings* had been met.

However, concerned about the possibility of a collusive settlement of the available liability coverage among the related occupants of the struck vehicle, the Court of Appeals remanded the case to the district court for further findings regarding each party's actual damages. The court instructed: "Once those damages are determined, the district court is directed to determine each person's pro rata share of the $43,000 settlement. *Jones' claim against AAA should be calculated as the difference between her pro rata share of the settlement and the total value of her damages.*" (Emphasis added.) 26 Kan. App. 2d at 209. O'Donoghue points to this language as establishing the rule for calculating the amount of UIM benefits payable: The amount of actual recovery from the tortfeasor is deducted from the claimant's total damages.

Shortly after *Jones*, the Kansas Supreme Court considered a factually similar scenario in *Cashman*, 270 Kan. 295. The plaintiff Cashman was one of three people injured by the tortfeasor, who carried liability coverage with 50/100 limits. Cashman's damages were found to be $40,539.91, an amount within the per person limit. However, the total of all claimants' damages exceeded the $100,000 per occurrence limit. Cashman settled with the tortfeasor's insurer for $25,000, as her pro rata share of the per occurrence limit. Cashman filed a claim against the UIM insurer, which provided 100/300 limits. The district court denied Cashman's claim for UIM benefits under the second prong of the *Cummings* test because her damages ($40,539.91) were not in excess of the $50,000 per person liability limit of the tortfeasor's policy. 270 Kan. at 296-97.

Finding the logic of *Jones* persuasive, the Kansas Supreme Court commented that Cashman could not receive the full amount of the per person liability coverage ($50,000) because the per occurrence limit ($100,000) was exhausted due to the multiple injured parties involved. 270 Kan. at 300-01. Like *Jones*, the Kansas Supreme Court remanded the case to the district court to determine the amounts of all the injured parties' respective damages and Cashman's pro rata share of the $100,000 available from the tortfeasor's liability insurer. It then advised: "Mandi [Cashman]'s UIM claim against American Family should be the difference between her pro rata share of the $100,000 settlement and her damages of $40,539.91." 270 Kan. at 302. The second paragraph of the syllabus contains even broader language: "The underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement and the total amount of damages up to the insured's underinsured liability limits . . . ." 270 Kan. at 295, Syl. ¶ 2. In setting forth the UIM provider's responsibilities, the Supreme Court made no mention of a "limits-to-limits" rule that would reduce the UIM per person liability limits.

As Farm Bureau correctly notes, the focal issue of both *Jones* and *Cashman* was whether there was *any* UIM coverage available to the insured, not whether a "limits-to-limits" rule applied to reduce the amount of benefits available to pay a proper UIM claim.

In *Jones* and *Cashman*, the UIM claimants' total damages were less than the UIM per person limit reduced by the tortfeasor's per person limit, *i.e.* their recovery would have been the same under either Farm Bureau's or O'Donoghue's theory. For instance, in *Jones*, the application of Farm Bureau's "limits-to-limits" rule would have yielded a maximum available benefit of $25,000 ($50,000 minus $25,000), but Jones' total damages were only $20,682.15. In *Cashman*, the maximum UIM exposure under Farm Bureau's theory would have been $50,000 ($100,000 minus $50,000); Cashman's damages ($40,539.91) were within that limit. Therefore, it does not appear that Farm Bureau's proffered interpretation of K.S.A. 40-284(b), creating a "per person limit-to-per person limit" rule, was squarely before the *Jones* or *Cashman* courts.

In *Jones* and *Cashman*, the multiple claimants dividing the tortfeasor's insurance proceeds were family members. However, once the actual damages are determined and the UIM insured's pro rata share of the tortfeasor's limits is calculated, the relationship of the injured parties should have no impact on the calculation of UIM benefits. *Cashman*'s directive to pay the difference between the UIM insured's pro rata share of the tortfeasor's insurance proceeds and the total amount of the insured's damages up to the insured's UIM limits should not be restricted to closely linked injured persons.

Farm Bureau focuses on the last, qualifying portion of 40-284(b). Neither the parties here nor the previous cases discuss the first, principal portion of the statute. The statute is not as plain as it could be. However, a fair reading of the first portion of the statute directs that insurance companies are to provide a UIM coverage which enables the insured to collect from his or her own insurance company the amount of money that the insured would have recovered from the tortfeasor, if the tortfeasor had been carrying the same liability limits as the insured. Here, if Brown had carried liability insurance with 100/300 limits, O'Donoghue would have recovered $100,000 from Brown. The $300,000 per occurrence limit was sufficient to fully fund the $100,000 per person limit for each of the three claimants, and O'Donoghue had over $100,000

in actual damages. By applying this interpretation of the statute, the problem of prorating UIM coverage among multiple claimants is dealt with in the same manner as the proration of the tortfeasor's limits. For instance, if there had been four UIM claimants, each with $100,000 in damages, the $300,000 UIM per occurrence limits would have been prorated, based on actual damages, rather than simply paid to the first persons to file a claim. It should be noted, however, that UIM is first party coverage and, ordinarily, not all persons claiming against the tortfeasor will be claiming UIM benefits under the same policy.

However, if K.S.A. 40-284(b) contained no further provision, O'Donoghue could collect $100,000 under the UIM, in addition to the $25,000 already collected from Brown's insurer. Therefore, the statute qualifies the UIM recovery "to the extent such [UIM] coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." It is noteworthy that the statute speaks to the UIM "coverage" exceeding the tortfeasor's "coverage." This connotes that the amount available for recovery under the tortfeasor's policy, considering both the per person and per occurrence limits and the number and respective damages of all claimants, is deducted from the amount which would have been available to the UIM claimant under the same scenario if the tortfeasor had carried the higher UIM limits to arrive at the amount which the UIM insurer must pay its insured. The qualifying portion of the statute does not create a "per person limits-to-per person limits" limitation rule, but rather it provides for a "coverage-to-coverage" comparison. Because of the tortfeasor's inadequate per occurrence limit, the tortfeasor's coverage available to O'Donoghue was $25,000.00. The amount that was payable under the tortfeasor's policy limits ($25,000) is deducted from the amount that would have been paid under the UIM policy limits ($100,000).

*Cashman* noted the purpose in mandating UIM coverage was "to fill the gap inherent in motor vehicle financial responsibility legislation and compulsory insurance legislation" and specifically directed that "K.S.A. 40-284(b) should be liberally construed in light of the legislative intent to compensate innocent persons dam-

aged by others without sufficient insurance." 270 Kan. Syl. ¶ 2. It would also seem logical that the purpose of UIM coverage is to allow one to purchase certain limits, *e.g.* 100/300, to be available to compensate the purchaser's injuries, regardless of the bodily injury limits carried by any potential tortfeasor. Although the limits-to-limits rule is simple to apply, it creates aberrant results. To illustrate, the following chart reflects the application of the limits-to-limits rule in this case if Brown had carried various bodily injury liability limits:

| Brown's B/I Limits | Farm Bureau's UIM payment | O'Donghue's total recovery |
| --- | --- | --- |
| Uninsured | $100,000 | $100,000 |
| 25/50 | $ 75,000 | $ 87,500 |
| 50/100 | $ 50,000 | $ 75,000 |
| 100/300 | -0- | $100,000 |

Surely, no gaps are filled and innocent persons are not adequately compensated by a rule that provides for full compensation only if the tortfeasor is either completely uninsured or fully insured. Further, it is counterintuitive to provide that the higher the tortfeasor's liability limits the smaller the injured innocent person's total recovery.

There was some suggestion that the limits-to-limits rule is necessary for insurance companies to be able to accurately define their UIM exposure. However, under K.S.A. 40-284(a), Farm Bureau was potentially liable for the entire 100/300, if Brown had been uninsured. There was no evidence that Farm Bureau's UIM coverage had been priced by an actuarial determination of the probability that O'Donoghue would be injured by a tortfeasor that carried 50/100 limits, rather than 25/50 or any other amount. Our interpretation of Farm Bureau's UIM responsibility retains the outside limits of $100,000 per person and $300,000 per occurrence. No hardship to the insurance industry is readily apparent.

Here, O'Donoghue's recovery from Brown would have been $100,000, if Brown had carried 100/300 liability limits. O'Donoghue recovered $25,000 from Brown because of the liability limits Brown actually had (50/100). O'Donoghue incurred

more than \$100,000 of damages. Therefore, the tortfeasor's coverage of \$25,000 is deducted from the UIM coverage of \$100,000 to arrive at the payable UIM benefit of \$75,000. The district court's ruling is affirmed.

*ATTORNEY FEES*

In its cross-appeal, O'Donoghue contends the district court erred in denying its motion for attorney fees pursuant to K.S.A. 40-256. During the hearing on the estate's motion for partial summary judgment, the district court denied the motion for attorney fees as premature. However, the district court permitted the estate to renew its motion at a later time. The record does not indicate the estate ever revived its motion, however. Furthermore, neither the journal entry of judgment nor the nunc pro tunc order addressed the merits of the motion for attorney fees.

K.S.A. 40-256 states:

"[I]n all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201 . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs . . . ."

O'Donoghue contends that *Jones* and *Cashman* clearly indicate Farm Bureau's obligation to provide \$75,000 in UIM coverage, and, therefore, Farm Bureau did not have just cause or excuse to deny the claim.

In *Evans v. Provident Life & Accident Ins. Co.,* 249 Kan. 248, 815 P.2d 550 (1991), the Kansas Supreme Court summarized the law regarding the award of attorney fees under K.S.A. 40-256:

"The question of whether an insurer has refused to pay without just cause or excuse is one of fact for the trial court. [Citation omitted.] In refusing to pay a claim, an insurance company has a duty to make a good faith investigation of the facts surrounding the claim. [Citation omitted.] If there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay without just cause or excuse. [Citation omitted.] Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances in each case. [Citation omitted.]

"Whether there was just cause to refuse payment and, therefore, justification for denial of attorney fees is in the trial court's sound discretion. [Citation omitted.] Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. [Citation omitted.]" 249 Kan. at 261-62.

It is not clear that the attorney fee issue was properly presented to the district court and thereby preserved for appeal. See *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999). Nevertheless, the district court's denial of attorney fees was a valid exercise of its discretion. When an insurance controversy involves an issue of first impression, the award of attorney fees is inappropriate. *Garrison v. State Farm Mut. Auto. Ins. Co.*, 20 Kan. App. 2d 918, 931, 894 P.2d 226, *aff'd* 258 Kan. 547, 907 P.2d 891 (1995). Furthermore, the presence of an issue raised in good faith bars an award of attorney fees under K.S.A. 40-256. *Whitaker v. State Farm Mut. Auto Ins. Co.*, 13 Kan. App. 2d 279, 284-85, 768 P.2d 320 (1989). As we noted above, *Jones* and *Cashman* were not clearly on point and Farm Bureau had a bona fide reason for its interpretation of the maximum UIM benefits payable. An award of attorney fees would have been inappropriate.

Affirmed.

GERNON, J., dissenting: I respectfully dissent.

In Kansas, underinsured motorist (UIM) coverage is mandated by K.S.A. 40-284(b), which provides:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

This statute is plain and unambiguous. *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 638, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989).

As I read the plain language of K.S.A. 40-284(b), it means that an underinsured motorist should be able to recover UIM benefits only to the extent that the insured's UIM coverage exceeds the tortfeasor's liability limits.

I read the plain language to mean that the amount of UIM benefits available to an insured must be determined by a "limits-to-limits" comparison of the UIM and liability coverages. Therefore, if the UIM coverage is the greater of the two, the insured may collect UIM benefits up to the amount of the difference between the two coverages.

This court recognized such a rule in *Cummings*, 13 Kan. App. 2d at 638. We reaffirmed that position in *Taylor v. Allstate Indemnity Co.*, 30 Kan. App. 2d , P.3d (April 12, 2002).

In *Cummings*, we stated that K.S.A. 40-284(b)

"is unambiguous and plainly indicates that the underinsured motorist coverage enables the insured to recover from his underinsured motorist carrier damages 'to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.' In other words, if the underinsured motorist coverage in the policy covering appellants exceeds the limits of the liability coverage in effect on the driver of the other vehicle, resort may be had to underinsured motorist coverage. In this case, however, both limits were the same.

. . . .

" . . . Since underinsured motorist coverage is only available to the extent that it exceeds the limits of the bodily injury coverage carried by the driver of the other vehicle, under the facts of this case, underinsured motorist coverage is not available.

. . . .

"In determining whether underinsured motorist coverage is available, two steps must be satisfied: (1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage." 13 Kan. App. 2d at 638-39.

Two other cases, *Cashman v. Cherry*, 270 Kan. 295, 13 P.3d 1265 (2000), and *Jones v. Automobile Club Inter-Insurance Exchange*, 26 Kan. App. 2d 206, 981 P.2d 767, *rev. denied* 268 Kan. 847 (1999), deal with similar coverage issues, but not precisely the issue here.

The issue in both *Cashman* and *Jones* was whether an underinsured motorist claim existed. Both dealt with family settlements.

Neither *Cashman* nor *Jones* dealt with how the available under-insured motorist coverage should be calculated. I read nothing in either case which modifies the overarching and traditional limits-to-limits rule.

The limits-to-limits rule makes both economic and public policy sense. The insurance industry must be able to calculate risk and exposure. The application of some rule which is uncertain could potentially make it impossible to assess risk, could help promote collusion, and, in the long run, could affect the underwriting of underinsured motorist coverage.

For the reasons stated, I dissent.