No. 87,002

PETER O'DONOGHUE, Administrator of the Estate of CHONG AE O'DONOGHUE, and SEAN O'DONOGHUE, heir-at-law of CHONG AE O'DONOGHUE, *Appellees*, v. FARM BUREAU MUTUAL INSURANCE CO., INC., *Appellant.*

66 P.3d 822

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 626, 49 P.3d 22 (2002). Opinion filed April 18, 2003.

*Arthur S. Chalmers*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, argued the cause, and *Don D. Gribble, II*, and *Vince P. Wheeler*, of the same firm, were with him on the briefs for appellant.

*Corlin J. Pratt*, of Grace, Unruh & Pratt, L.C., of Wichita, argued the cause, and *Terry L. Unruh*, of the same firm, was on the briefs for appellees.

The opinion of the court was delivered by

DAVIS, J.: The question we must resolve involves an interpretation of K.S.A. 40-284(b) under undisputed facts. Chong Ae O'Donoghue died in an automobile accident and because of multiple claims against the tortfeasor's liability coverage her estate recovered only a small portion of her actual damages from the tortfeasor. The district court determined, and the Court of Appeals agreed, that O'Donoghue was entitled to recover underinsured motorist (UIM) benefits for actual damages sustained up to the limit of her UIM coverage less the amount recovered from the tortfeasor. Farm Bureau claims her recovery should be limited to the difference between her UIM coverage limit and the tortfeasor's liability limit. We granted Farm Bureau's petition for review.

The following facts set forth in the Court of Appeals' opinion *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 30 Kan. App. 2d 626, 627-28, 49 P.3d 22, 24 (2002), are not in dispute:

"In July 1999, O'Donoghue, a passenger in a vehicle driven by Sarah Brown, was killed in a single-car accident. There were two other passengers in the vehicle; one was also killed in the accident and the other was severely injured. Thus, there

were three claimants against the driver's insurer, American Family Insurance Company (American Family).

"Brown's American Family automobile insurance policy provided bodily injury liability limits of $50,000 per person and $100,000 per occurrence (50/100), *i.e.*, American Family would not pay any one person more than $50,000 and would not pay more than a total of $100,000 to compensate all of the persons injured in the same accident. Brown's coverage limits were insufficient to fully compensate all three claimants. The parties agreed to divide the total per occurrence monies available under the American Family policy as follows: the injured passenger would receive $50,000 and each of the decedents' estates would receive $25,000. Farm Bureau, as O'Donoghue's insurer, approved of the settlement with American Family as being a fair and reasonable distribution of Brown's liability limits.

"O'Donoghue's Farm Bureau policy provided UIM coverage with limits of $100,000 per person and $300,000 per occurrence (100/300). The parties have agreed that O'Donoghue's damages exceeded $100,000. O'Donoghue made a claim under Farm Bureau's UIM coverage for $75,000, representing the $100,000 per person limit less the $25,000 recovery from American Family. Farm Bureau countered that its maximum liability to O'Donoghue was $50,000, computed by subtracting Brown's per person limit of $50,000 from O'Donoghue's per person limit of $100,000.

"The estate filed a petition and a motion for partial summary judgment, asking the district court to declare $75,000 in UIM coverage available to O'Donoghue. The district court granted O'Donoghue's partial summary judgment, finding that $75,000 in UIM coverage was available, but the court denied O'Donoghue's motion for attorney fees under K.S.A. 40-256. The parties later agreed to a journal entry of judgment. Farm Bureau paid the uncontested amount of $50,000 to O'Donoghue, but appealed the $75,000 judgment. O'Donoghue cross-appealed the denial of attorney fees."

The issue involving attorney fees is not involved in this appeal. We granted Farm Bureau's petition for review on the sole issue of whether, under the provisions of K.S.A. 40-284(b) in the circumstances of this case, O'Donoghue is entitled to recover from Farm Bureau UIM benefits of $75,000 or whether she is limited to the difference between her UIM limit of $100,000 and Brown's liability limit of $50,000.

. The interpretation of a statute is a question of law subject to unlimited review. *Halsey v. Farm Bureau Mut. Ins. Co., Inc.*, 275 Kan. 129, Syl. ¶ 1, 61 P.3d 691 (2003). The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, the court must give effect to the intention of the leg-

islature as expressed, rather than determine what the law should or should not be. *State ex. rel. Stovall v. Meneley,* 271 Kan. 355, 378, 22 P.3d 124 (2001). However, where the intent is not clearly expressed, courts are not limited to consideration of the language employed but may properly look into the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effect the statute may have under various suggested constructions. A statute should never be given a construction that leads to uncertainty, injustice, or confusion if possible to construe it otherwise. In construing a statute, words and phrases should be construed according to context and the approved usage of the language, and words in common use are to be given their natural and ordinary meaning. *KPERS v. Reimer & Koger Assocs. Inc.,* 261 Kan. 17, Syl. ¶ 2, 927 P.2d 466 (1996).

This court recently interpreted the provisions of K.S.A. 40-284(b) in *Halsey.* Unlike the question we face in this case, the question in *Halsey* was whether UIM coverage existed. Here, there is no question that UIM coverage existed for O'Donoghue. The Court of Appeals rendered its decision in this case on April 26, 2002. *Halsey* was decided on January 24, 2003, after we had granted Farm Bureau's petition for review in this case. Halsey argued that the Court of Appeals' opinion in this case supported his claim that coverage existed. However, we noted in *Halsey*: "A petition for review was filed with this court in *O'Donoghue* which we subsequently granted. Pursuant to [Supreme Court] Rule 8.03(i) (2002 Kan. Ct. R. Annot. 56), *O'Donoghue* has no precedential value." 275 Kan. at 140. Thus, we did not take into consideration the Court of Appeals' holding in this case in our *Halsey* opinion.

We did interpret the provisions of K.S.A. 40-284(b) on the issue of whether UIM coverage existed for Halsey under her Farm Bureau policy. K.S.A. 40-284(b) provides:

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured

motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

Highly summarized, Halsey's UIM coverage was in the amount of $500,000 and the tortfeasor carried liability coverage of $1,000,000. Because of the number of claimants recovering from the tortfeasor, Halsey received less than her actual damages and looked to her UIM coverage. In denying coverage and keying upon the statutory language in the last two lines of the statute, "to the extent such coverage [UIM] exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle," we concluded:

> "The plain and unambiguous language of K.S.A. 40-284(b) requires a limits-to-limits comparison *when determining whether underinsured motorist (UIM) coverage exists*. In those cases where the UIM coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle, UIM coverage exists. However, in those cases, such as the case we now consider where the UIM coverage equals or does not exceed the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle, there is no UIM coverage." (Emphasis added.) 275 Kan. 129, Syl. ¶ 4.

*Halsey* tracked the statutory language and relied heavily on earlier decisions by this court and the Court of Appeals with particular emphasis on *State Farm Mut. Auto. Ins. Co.* v. *Cummings*, 13 Kan. App. 2d 630, 778 P.2d 370 (1989), wherein the Court of Appeals adopted the following test in determining whether UIM coverage is available: "(1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage." 13 Kan. App. 2d at 639. We noted in *Halsey* that K.S.A. 40-284(b) had been in existence for a number of years, that *Cummings* based its decision on the plain language of the statute, and that the legislature had not altered the statute in the past 13 years since the *Cummings* decision. 275 Kan. at 136.

Unlike *Halsey*, the question involved in this case involves the amount of UIM coverage where that coverage exists. This question is one of first impression in this state, although two Kansas appellate decisions have touched on the amount of coverage in cases where it has been determined coverage exists. *Jones v. Automobile*

*Club Inter-Insurance Exchange*, 26 Kan. App. 2d 206, 981 P.2d 767, *rev. denied* 268 Kan. 847 (1999), and *Cashman v. Cherry*, 270 Kan. 295, 13 P.3d 1265 (2000), as discussed below, deal with the amount of UIM coverage but do not directly address the issue we must resolve in this case.

After a thorough discussion of Kansas cases involving an interpretation of K.S.A. 40-284(b), the Court of Appeals in this case noted that Farm Bureau again focuses on the statutory language we relied on in *Halsey*. Farm Bureau argues that such language also calls for a limit-to-limit comparison in determining the amount of UIM coverage with the result that O'Donoghue is only entitled to $50,000, *i.e.*, the UIM per person limits ($100,000) minus liability per person limits ($50,000). However, we deal with the extent of existing coverage, and it is important to remember that O'Donoghue suffered actual damages in excess of $100,000. She recovered $25,000 from the tortfeasor and seeks the remainder of her actual damages from her UIM carrier up to her per person limit of $100,000 or $75,000. Adopting the interpretation advanced by Farm Bureau would result in a recovery of $25,000 less than her UIM limit for actual damages sustained. Again, we do not deal with a question of coverage but rather a question of the amount of that recovery where UIM coverage exists. In addressing this issue the Court of Appeals stated:

"Farm Bureau focuses on the last, qualifying portion of 40-284(b). Neither the parties here nor the previous cases discuss the first, principal portion of the statute. The statute is not as plain as it could be. However, a fair reading of the first portion of the statute directs that insurance companies are to provide a UIM coverage which enables the insured to collect from his or her own insurance company the amount of money that the insured would have recovered from the tortfeasor, if the tortfeasor had been carrying the same liability limits as the insured. Here, if Brown had carried liability insurance with 100/300 limits, O'Donoghue would have recovered $100,000 from Brown. The $300,000 per occurrence limit was sufficient to fully fund the $100,000 per person limit for each of the three claimants, and O'Donoghue had over $100,000 in actual damages. By applying this interpretation of the statute, the problem of prorating UIM coverage among multiple claimants is dealt with in the same manner as the proration of the tortfeasor's limits. For instance, if there had been four UIM claimants, each with $100,000 in damages, the $300,000 UIM per occurrence limits would have been prorated, based on actual damages, rather than simply paid to

the first persons to file a claim. It should be noted, however, that UIM is first party coverage and, ordinarily, not all persons claiming against the tortfeasor will be claiming UIM benefits under the same policy.

"However, if K.S.A. 40-284(b) contained no further provision, O'Donoghue could collect $100,000 under the UIM, in addition to the $25,000 already collected from Brown's insurer. Therefore, the statute qualifies the UIM recovery 'to the extent such [UIM] coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.' It is noteworthy that the statute speaks to the UIM 'coverage' exceeding the tortfeasor's 'coverage.' This connotes that the amount available for recovery under the tortfeasor's policy, considering both the per person and per occurrence limits and the number and respective damages of all claimants, is deducted from the amount which would have been available to the UIM claimant under the same scenario if the tortfeasor had carried the higher UIM limits to arrive at the amount which the UIM insurer must pay its insured. The qualifying portion of the statute does not create a 'per person limits-to-per person limits' limitation rule, but rather it provides for a 'coverage-to-coverage' comparison. Because of the tortfeasor's inadequate per occurrence limit, the tortfeasor's coverage available to O'Donoghue was $25,000. The amount that was payable under the tortfeasor's policy limits ($25,000) is deducted from the amount that would have been paid under the UIM policy limits ($100,000)." 30 Kan. App. 2d at 632-33.

The Court of Appeals' interpretation of K.S.A. 40-284(b) when dealing with the amount of UIM coverage where it has been established that such coverage exists raises questions about the meaning of the language used by the legislature. While the language may be clear when faced with a question of whether UIM coverage exists, once it has been determined that such coverage does exist, the Court of Appeals' interpretation is persuasive and consistent with the remedial nature of K.S.A. 40-284(b). This is especially true when consideration is given to the historical background of the enactment, the circumstances attending its passage, and the purposes to be accomplished by its adoption. See *KPERS*, 261 Kan. 17, Syl. ¶ 2.

Within 10 years of the passage of uninsured motorist (UM) mandatory coverage legislation, this court said in *Simpson v. Farmers Ins. Co.*, 225 Kan. 508, 592 P.2d 445 (1979), after a discussion of all cases to that date interpreting the provisions of K.S.A. 40-284:

"In all of the cases just discussed, this court has made it crystal clear that the uninsured motorist statute is remedial in nature and *should be liberally construed to provide a broad protection to the insured against all damages resulting from*

*bodily injuries sustained by the insured,* caused by an automobile accident, and arising out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured motorist." (Emphasis added.) 225 Kan. at 512.

The 1981 amendment enacting UIM coverage is subject to the same rules of liberal construction. In *Rich v. Farm Bur. Mut. Ins. Co.,* 250 Kan. 209, 824 P.2d 955 (1992), citing earlier cases interpreting K.S.A. 40-284(b) involving both UM and UIM coverage as well as *Simpson,* this court addressed the nature and purpose of such coverage:

> "The purpose of the legislation mandating the offer of uninsured and underinsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. This coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorist who because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages. [Citation omitted.]

> "The uninsured and underinsured motorist statutes are remedial in nature. They should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arise out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured or underinsured motorist. See *Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 512, 592 P.2d 445 (1979). Other states have similarly found their uninsured and underinsured motorist statutes are remedial in nature and should be liberally construed to provide broad protection. [Citations omitted.]

> "Uninsured and underinsured motorist coverage was developed by the Kansas Legislature as a means of protecting individuals from negligent uninsured or underinsured motorists. The purpose of K.S.A. 40-284 is to provide the individual who is covered by the standard automobile liability policy with a right against his or her own insurer equal to that the insured would have against the uninsured or underinsured tortfeasor. [Citation omitted.]" *Rich,* 250 Kan. at 215-16.

More recent decisions by the Court of Appeals and this court involving a similar question to what we have in this case are helpful in resolving the issue. Recalling the two-step test set forth in *Cummings* and our adoption of the first part of that test in *Halsey,* two important cases followed *Cummings* involving the question of UIM coverage under the second part of *Cummings:* "[T]he claimant must have damages in excess of the opposing party's liability cov-

erage." 13 Kan. App. 2d at 639. See *Jones* 26 Kan. 206, and *Cashman*, 270 Kan. 295.

In *Jones*, Joan Coffman Jones, Everetta Burris, and Terry Burris, all related to one another, were injured in a collision with a vehicle driven by Alvin Barrett, who was 100% at fault. A passenger in Barrett's vehicle was also injured. Jones' UIM coverage was in the amount of $50,000 per person and $100,000 per occurrence. Barrett's liability coverage was in the amount of $25,000 per person and $50,000 per occurrence. While the Court of Appeals remanded for a determination of the actual damages sustained by all related parties in order to avoid "a potentially collusive distribution of a settlement," 26 Kan. App. 2d at 209, the four claims made against the tortfeasor exceeded his per occurrence liability coverage of 50,000. Jones received only $7,826 from the tortfeasor's liability coverage but her actual damages were $20,682.15. Since Jones' actual damages of $20,682.15 were less that the per-person limits of the tortfeasor's liability limit of $25,000, the trial court held that UIM coverage was not available.

Because K.S.A. 40-284(b) is remedial in nature, requires a more liberal construction, and has a gap-filling nature, the Court of Appeals in *Jones* looked to the words of the statute and concluded that the "legislature did not specify the per person liability limit or the per occurrence liability limit be used. Instead, the legislature used the word 'limits' rather than 'limit.' By using the plural, the legislature referred to more than one limit. Accordingly, either the per person or the per occurrence limit may apply." 26 Kan. App. 2d at 209.

*Jones* said that "[w]hether the per person or the per occurrence liability limit applies will depend on which limit impairs the insured's ability to receive compensation from the other motorist." 26 Kan. App. 2d at 209. Applying the limit most favorable to the insured of $50,000, the Court of Appeals determined that all the claims against the tortfeasor exceeded the $50,000 liability limit, which fulfilled the second part of the *Cummings* test that "the claimant must have damages in excess of the opposing party's liability coverage." 26 Kan. App. 2d at 209; see *Cummings*, 13 Kan. App. 2d at 639. Thus, UIM coverage was available, and *Jones* was

remanded for a determination of the actual damages between the related parties.

After determining that UIM coverage was available, *Jones* concluded:

"Under the facts of this case that involves a group settlement with the tortfeasor, the underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement and the total amount of damages up to the insured's underinsured liability limits." 26 Kan. App. 2d 206, Syl. ¶ 7.

*Cashman* presents much the same situation as *Jones*. Mandi Cashman's UIM coverage was in the amount of $100,000 per person and $300,000 per occurrence. Liability coverage for the tortfeasor was in the amount of $50,000 per person and $100,000 per occurrence. Cashman's damages were in the amount of $40,539.91. Because of multiple claims against the tortfeasor's liability coverage, she recovered only $25,000. Although we remanded to determine damages among related parties, this court held that *Jones* trumps *Cummings*. *Cashman*, 270 Kan. at 296. We held that Cashman's $40,539.91 in damages combined with the other damages against the tortfeasor exceeded the per occurrence limit of the tortfeasor's liability limit of $100,000, and UIM coverage was therefore available although Cashman's damages did not exceed the tortfeasor's per person liability limit of $50,000. 270 Kan. at 300-302.

In both *Jones* and *Cashman*, the courts looked to the purpose of mandating UM and UIM coverage under K.S.A. 40-284(b):

"*Jones* looked to the language of K.S.A. 40-284(b), noting that the legislature's purpose in mandating UIM coverage is to 'fill the gap inherent in motor vehicle financial responsibility legislation and compulsory insurance legislation.' K.S.A. 40-284(b) should be liberally construed in light of the legislative intent to compensate innocent persons damaged by others without sufficient insurance. 26 Kan. App. 2d at 208. We agree." *Cashman*, 270 Kan. at 300.

Again, after determining that UIM coverage existed for Cashman, we remanded *Cashman* with instructions to determine the amount of her recovery and held:

"The underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement and the total amount of damages up to the insured's underinsured liability limits." 270 Kan. 295, Syl. ¶ 2.

"Mandi's UIM claim against American Family should be the difference between her pro rata share of the $100,000 settlement and her damages of $40,539.91." 270 Kan. at 302.

Applying the *Cashman* and *Jones* rationale to this case, Farm Bureau would be responsible for paying the difference between O'Donoghue's pro rata share of the settlement ($25,000) and the total amount of damages up to the insured's UIM limits ($100,000). Thus, according to *Cashman* and *Jones,* Farm Bureau would be liable under its UIM coverage for $75,000, the amount determined to be due by the district court and the Court of Appeals in this case.

While *Jones* and *Cashman* did not reach the issue we now face because the amount of damages sought from the UIM coverage did not exceed the UIM insurer's limit reduced by the tortfeasor's liability limit, it is important to note that the court in both cases interpreted the statute to provide the coverage consistent with the legislative intent expressed in *Rich.* Both courts relied heavily on the liberal construction of remedial legislation and the broad protection envisioned by the legislature. Both courts focused on the need to establish the actual damages incurred by the UIM claimant and the coverage provided for by the tortfeasor. Likewise, we extend that rationale to the calculation of O'Donoghue's recovery of UIM benefits from Farm Bureau.

Farm Bureau and the dissenting opinion in the Court of Appeals' decision in this case argued that the result we reach will impede the insurance industry in calculating the risk and exposure for UIM coverage. However, we believe that the majority opinion of the Court of Appeals adequately addressed this concern:

"There was some suggestion that the limits-to-limits rule is necessary for insurance companies to be able to accurately define their UIM exposure. However, under K.S.A. 40-284(a), Farm Bureau was potentially liable for the entire 100/300, if Brown had been uninsured. There was no evidence that Farm Bureau's UIM coverage had been priced by an actual determination of the probability that O'Donoghue would be injured by a tortfeasor that carried 50/100 limits, rather than 25/50 or any other amount. Our interpretation of Farm Bureau's UIM responsibility retains the outside limits of $100,000 per person and $300,000 per occurrence. No hardship to the insurance industry is readily apparent." *O'Donoghue,* 30 Kan. App. 2d at 634.

We acknowledge that the Court of Appeals in *Taylor v. Allstate Indemnity Co.*, 30 Kan. App. 2d 595, 43 P.3d 260 (2002), reaches a different result than the Court of Appeals reached in this case. However, we do not agree with the *Taylor* decision and reject its holding.

The historical background and the purposes to be accomplished by K.S.A. 40-284(b), as expressed in the appellate decisions of this state, support the result reached by the Court of Appeals in this case. Moreover, the interpretation of K.S.A. 40-284(b), under the facts of this case, by the Court of Appeals provides the broad protection to the insured against all damages as envisioned by the legislature. *Simpson,* 225 Kan. at 512. Consistent with our holding in *Cashman,* we hold that Farm Bureau is responsible for paying O'Donoghue $75,000; that is, the difference between O'Donoghue's pro rata share of the settlement from the tortfeasor ($25,000) and her total amount of damages up to her UIM limits ($100,000).

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

ABBOTT and GERNON, JJ., not participating.

LARSON, S.J. and WAHL, S.J., assigned.