(111 P.3d 188)
No. 92,723

WILLARD TILLEY, *Appellant,* v. ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY, *Appellee.*

Opinion filed
May 13, 2005.

*Gary D. White, Jr.,* and *Jerry R. Palmer,* of Palmer, Leatherman & White,
L.L.P., of Topeka, for appellant.

*William A. Larson* and *Craig C. Blumreich,* of Gehrt & Roberts, Chartered, of
Topeka, for appellee.

Before MARQUARDT, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: Willard Tilley was injured when a car he was a pas-
senger in collided with a car driven by Joshua Middleton. On ap-
peal, Tilley contends that he was entitled to underinsured motorist
(UIM) benefits because his UIM coverage exceeded Middleton's

liability coverage. The trial court disagreed and granted summary judgment in favor of Tilley's UIM carrier. We affirm.

Tilley and his wife were passengers in a car driven by their son-in-law Ron Bramhall. Their car collided with a car driven by Middleton. As a result of the accident, Tilley's wife was killed, and Tilley was injured. Bramhall was also killed in the accident, and their daughter Nancy, Bramhall's wife, was injured as a result of the accident.

Allied Property & Casualty Insurance (Allied) had issued a car insurance policy to the Tilleys which provided UIM benefits in the amount of $250,000 per person and $500,000 per accident.

Allied had also issued a $500,000 single limit policy which covered Middleton. The policy stated:

"If this policy provides single limit Liability Coverage, Paragraph B. of the Limit of Liability provision is replaced by the following:

"We will apply the limit of liability shown in the Declarations to first provide the separate limits required by the Statutes of the State of Kansas as follows:

1. $25,000 for 'bodily injury' of one person in any one auto accident;

2. $50,000 for 'bodily injury' of two or more people in any one auto accident; and

3. $10,000 for injury to or destruction of property of others in any one auto accident.

"This provision will not change our total limit of liability."

Neil Freund, Allied's representative, evaluated the liability claims of the two decedents' estates and the two survivors and made an offer of the balance of the $500,000 policy on Middleton's behalf. Freund prorated the sums among the injured and killed. Freund evaluated the following amounts per person: (1) Tilley's wife - $258,635 in damages, prorated to $105,348.19; (2) Tilley - $240,000 in damages, prorated to $100,559.63; (3) Bramhall - $559,052 in damages, prorated to $229,850.59; and (4) Bramhall's wife - $97,642 in damages, prorated to $43,096.94.

Tilley moved for summary judgment, arguing that the court should find as a matter of law that his policy allowed for UIM benefits in the amount of $250,000 per person as well as $500,000 for each accident. He further argued that he remained uncompensated in the amount of $284,092.18 for his injuries and for the

death of his wife. Specifically, Tilley maintained that he was owed $144,651.81 for his wife's death ($250,000-$105,348.19) and $139,440.37 for his own injuries ($240,000-$100,559.63).

Tilley's arguments for summary judgment were based on a contract claim and statutory interpretation. Tilley argued that under his contract, his policy makes two promises: (1) coverage in the amount of $250,000 per person and (2) $500,000 per accident. Under this policy, the most any one person could receive would be $250,000. Tilley maintained that Middleton's Endorsement AA0156(c) had replacement language stating that $25,000 was for bodily injury of one person in one accident. Therefore, Tilley argued that the comparison in liability was between $25,000 and $250,000, and his UIM single limit ($250,000) exceeded Middleton's liability single limit ($25,000). Tilley also argued that K.S.A. 40-284(b) does not differentiate between the per person liability limit or the per occurrence liability limit; rather, it uses the word "limits," not limit. Therefore, either the per person or the per occurrence limit should apply.

Allied also moved for summary judgment, arguing that there was no genuine issue of material fact and that Allied was entitled to a judgment as a matter of law. Specifically, Allied argued that Tilley did not have UIM coverage because the limits of Tilley's policy did not exceed Middleton's liability policy.

The trial court granted Allied's summary judgment motion and denied Tilley's summary judgment motion. The trial court also concluded that in order for Tilley to recover UIM benefits, Tilley must satisfy a two-part test set forth in *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989). Based on K.S.A 40-284(b), the trial court determined that UIM coverage did not exist.

Tilley argues that UIM coverage existed because Middleton's liability insurance policy endorsement operated to reduce the $500,000 per occurrence (single limits) liability policy to $50,000, since four persons were injured by Middleton's negligence. Tilley contends that since the $25,000 or $50,000 liability coverage under Middleton's policy is less than his per person underinsured limit

of $250,000, he has a valid underinsured motorist claim against Allied.

Whether UIM coverage is available to Tilley under Allied's policy involves an interpretation of K.S.A. 40-284(b) and construction of the Allied insurance policy. "The interpretation of a statute as well as the construction of a written insurance policy based on stipulated facts are questions of law subject to unlimited review. [Citations omitted.]" *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, 132, 61 P.3d 691 (2003).

K.S.A. 40-284(b) states:

"Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

"Whether the above statutory language requires UIM coverage under the facts of this case involves a construction of the above statutory language." *Halsey*, 275 Kan. at 133. Legislative intent, if that intent can be ascertained, is the fundamental rule for statutory construction. 275 Kan. at 133. The purpose of the legislation mandating UIM coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. "This coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages. [Citation omitted.]" *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 215, 824 P.2d 955 (1992).

Allied argues that UIM coverage was not available to Tilley because Middleton had a single liability limit of $500,000, whereas Tilley's UIM policy limit was $250,000 per person or $500,000 per occurrence. The first Kansas case to interpret K.S.A. 40-284(b) was *State Farm Mut. Auto. Ins. Co. v. Cummings,* 13 Kan. App. 2d 630, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989). In *Cummings*, an accident occurred when a car owned by Vivian Pinnell but driven

by Charles Pinnell collided with a car driven by Carlene Purcell but owned by James Cummings. As a result of the accident, one of the three occupants in Pinnell's car was killed, and the other two were injured. Purcell was insured. Her policy provided liability coverage of $50,000 per person and $100,000 per accident; Cummings had no liability insurance or any other kind of coverage. Pinnell and the other occupants were insured under her policy, which provided coverage of $50,000 per person and $100,000 per accident and UIM coverage of a like amount. This court had to decide whether the trial court erred in ruling that the underinsured provisions of the policy did not afford coverage to the injured parties.

*Cummings* set forth a two-step analysis to determine whether UIM coverage is available under K.S.A. 40-284(b): "(1) The opposing party's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the opposing party's liability coverage." 13 Kan. App. 2d at 639. In *Cummings*, this court determined the coverage of the tortfeasor's car was not below the coverage of the appellant's liability coverage but equal to it. The insured was unable to satisfy part one of the two-part test; therefore, the insured was precluded from recovering UIM benefits.

Although *Cummings* was abrogated in part by *Cashman v. Cherry*, 270 Kan. 295, 13 P.3d 1265 (2000), more than 13 years has passed since *Cummings* was decided, and the legislature has not changed what *Cummings* referred to as a harsh result. The legislature is presumed to agree with the court's interpretation of a statute if it fails to modify the statute. See *Halsey*, 275 Kan. at 136.

In *Halsey*, our Supreme Court had to determine if UIM coverage was available under the Farm Bureau policy by interpreting K.S.A. 40-284(b) and the language in the insurance policy. In that case, a collision occurred between a Chevrolet Suburban owned by Paul and Peggy Winter but driven by Robert Pauly and a tractor-trailer owned by D&G Trucking but driven by Larry Holmes. The accident occurred as a result of the negligence of both Pauly and Holmes. Halsey was a passenger in the Suburban and died as a

result of the injuries sustained in the accident. Two other passengers died, and four other passengers were severely injured.

Pauly had two insurance policies that provided a $300,000 per occurrence liability coverage. The Winters had coverage through Farm Bureau with a $300,000 per accident limit. Halsey received $40,741.68 under the Winters' Farm Bureau policy. Halsey's policy with Farm Bureau provided liability coverage and UIM coverage in the amounts of $500,000 per person and $500,000 per occurrence. Halsey sued to collect UIM benefits for damages which exceeded Winters' policy coverage. Holmes had an insurance policy issued by Wilshire Insurance Company under a $1,000,000 single-limit liability policy. The trial court entered judgment for Halsey against Farm Bureau for UIM coverage, and Farm Bureau appealed.

In *Halsey*, our Supreme Court analyzed *Cummings*. Using the two-part test in *Cummings*, the court determined that Halsey's policy coverage limits ($500,000) did not exceed the limits of bodily injury coverage carried by the owner or operator of the tractor-trailer ($1,000,000), and there was no indication in *Cummings* that K.S.A. 40-284(b) would allow UIM recovery in circumstances where the claimant's UIM coverage limit was equal to or less than the liability limits of the tortfeasor's policy. Based on the language of K.S.A. 40-284(b), coverage exists only when the UIM limits are greater than the liability limits of the tortfeasor's policy. 275 Kan. at 136.

Because K.S.A. 40-284(b) precluded UIM coverage, our Supreme Court looked to the Farm Bureau policy to determine if the policy provided greater benefits than provided in K.S.A. 40-284(b). The court found that the policy language required UIM benefits to be limited by the limits of the tortfeasor's policy. The court concluded that the Farm Bureau policy provided no UIM benefits beyond those required by the statute. 275 Kan. at 143-44. Therefore, Halsey was not entitled to UIM benefits.

K.S.A. 40-284(b) "should be liberally construed to provide broad protection to the insured against all damages resulting from injuries sustained by the insured that were caused by an . . . accident and arose out of the ownership, maintenance, or use of the insured

motor vehicle." *Jones*, 26 Kan. App. 2d at 208. Nevertheless, *Halsey* concluded that K.S.A. 40-284(b) required a limits-to-limits comparison when determining whether UIM coverage exists. Where UIM coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other car, UIM coverage exists. Where UIM coverage equals or does not exceed such limits, no UIM coverage exists. 275 Kan. at 143.

In this case, the parties stipulated that Middleton's combined single limit of liability was $500,000. Middleton's policy, as described above, was similar to a policy in *Levier v. Koppenheffer*, 19 Kan. App. 2d 971, 879 P.2d 40, *rev. denied* 255 Kan. 1002 (1994). Tilley argues that in *Levier* this court held that the policy's single limit liability coverage was subject to the per person liability limit. Tilley's quoted language, however, refers to the trial court's determination that the liability provision in the insurance policy was ambiguous. An insurance policy is ambiguous "if it fails to state that a 'per occurrence' limit on liability is expressly subject to the 'per person' limit" on liability. 19 Kan. App. 2d at 977-78. Language in that case does not seem to imply that a single limit of liability coverage is subject to per person liability. Here, it is apparent that Middleton's $500,000 single limit of liability is applicable once Middleton's insurance company pays out either the per person or per occurrence amount. See *Levier*, 19 Kan. App. 2d at 978.

Tilley's UIM coverage was $250,000 per person and $500,000 per occurrence. In order to receive UIM benefits under *Halsey*, Tilley's coverage must be greater than Middleton's coverage. Middleton's policy provided up to $25,000 for bodily injury of one person in any one auto accident or $50,000 for bodily injury to two or more persons in any one auto accident. See *Levier*, 19 Kan. App. 2d at 977. Nevertheless, this part of the policy is present to satisfy state law, specifically K.S.A. 40-3107. K.S.A. 40-3107(e) states:

"[L]imits of liability . . . not less than $25,000 because of bodily injury to, or death of, one person in any one accident . . . not less than $50,000 because of bodily injury to, or death of, two or more persons in any one accident, and to a limit of not less than $10,000 because of harm to or destruction of property of others in any one accident."

Middleton's single limit of liability, however, was $500,000, and the policy stated that the bodily injury amounts did not change the policy's total limit of liability. Based on *Levier*, the policy provision only indicates how the first $25,000 or $50,000 will be allocated. Furthermore, Middleton's insurance paid out $100,559.63 for Tilley's injuries and $105,348.19 for Tilley's wife's injuries and death, which was above the liability amount of $50,000 per occurrence. It is apparent that Allied interpreted Middleton's policy liability limit as $500,000 because it paid out more than $205,000 to the Tilleys.

Tilley's coverage ($250,000/$500,000) did not exceed Middleton's liability coverage ($500,000). Neither of the UIM coverage limits of the Tilley policy exceeded the limit of liability coverage of the Middleton policy. According to K.S.A. 40-284(b), UIM benefits exist only when the UIM limits are greater than those of the tortfeasor's policy. See *Halsey*, 275 Kan. at 136. Therefore, because Tilley's UIM limits were not greater than Middleton's limits, Tilley was not entitled to recover UIM benefits.

Because Tilley was not entitled to coverage under K.S.A. 40-284(b), *Halsey* dictates that this court should look to see if Tilley's coverage furnished greater protection than K.S.A. 40-284(b). Tilley's coverage provides that an underinsured motor vehicle "means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." "Coverage for losses caused by an 'underinsured motor vehicle' shall be limited to the difference between the underinsured motorist coverage limits provided in this Part and the coverage limits provided in any applicable bodily injury liability bond or policy available to the underinsured motorist."

Similar language was used in the insurance policy in *Halsey*, and the court found that Halsey's policy with Farm Bureau reflected no UIM benefits beyond those required by K.S.A. 40-284(b). See *Halsey*, 275 Kan. at 144. The same can be said in this case. Therefore, Tilley's policy did not furnish more coverage than that found in K.S.A. 40-284(b).

Affirmed.