No. 120,358

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

E.H., a minor,
by and through Melissa J. Hemenway,
her mother and natural guardian,
*Appellee*,

v.

AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE,
*Appellant*.

SYLLABUS BY THE COURT

1.

The interpretation of the clear language of an insurance policy raises a question of law subject to de novo review.

2.

The purpose of K.S.A. 40-284, which mandates the offer of uninsured and underinsured motorist coverage, is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. This coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages.

3.

The uninsured and underinsured motorist statutes are remedial in nature. They should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arise out of the ownership, maintenance, or use of the insured

motor vehicle where those damages are caused by the acts of an uninsured or underinsured motorist.

4.

When reviewing a claim of underinsured motorist coverage under K.S.A. 40-284(b), a court must first determine whether UIM coverage exists. When determining whether underinsured motorist coverage is available under the provisions of K.S.A. 40-284(b) in a given case, (1) the tortfeasor's liability coverage must be below the claimant's liability coverage and (2) the claimant must have damages in excess of the tortfeasor's liability coverage.

5.

In calculating the amount of underinsured motorist benefits where the damages recovered from the tortfeasor are less than the total amount of actual damages because of multiple claims against the tortfeasor's liability insurance limits, the underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement with the tortfeasor and the insured's total amount of damages up to the insured's underinsured motorist limits.

6.

The provisions of K.S.A. 40-284 are mandatory insofar as they stipulate what insurance policies in this state must contain. The provisions of the statute are to be considered a part of every automobile policy in this state, and an automobile policy is controlling only to the extent that it does not conflict with or attempt to diminish or omit the statutorily mandated coverage. Thus, unless authorized by statute, provisions of an insurance policy which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by K.S.A. 40-284 are void and unenforceable.

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed July 26, 2019. Reversed and remanded with directions.

*Robert J. Luder* and *Lesley Renfro Willson*, of Luder & Weist, LLC, of Overland Park, for appellant.

*Thomas B. Diehl*, of Ralston, Pope & Diehl, LLC, of Topeka, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

POWELL, J.: E.H., a minor, was a passenger in her parents' automobile when it was involved in a three-car accident. E.H., her mother and father, and her two siblings all filed claims against the tortfeasor's (at-fault driver's) insurance. Because the tortfeasor's insurance was insufficient to cover their injuries, E.H. and her father sought underinsured motorist (UIM) coverage from their insurance carrier, Automobile Club Inter-Insurance Exchange (ACIIE). A dispute arose between E.H. and ACIIE as to the amount of UIM coverage available to E.H.; E.H. filed suit, and the district court declared the maximum amount of UIM coverage available to E.H. was the $50,000 per person limit minus the $12,000 she received from the tortfeasor for a total of $38,000. ACIIE now seeks interlocutory review of this ruling, arguing the district court erred because under its policy and K.S.A. 40-284(b), only $10,000 in UIM coverage remains available for E.H.

For the reasons we more fully explain below, we find that the district court erred in its calculation of the amount of UIM coverage to which E.H. is entitled and hold that E.H. is entitled to up to $35,000 in UIM insurance coverage. We therefore reverse the district court and remand.

FACTUAL AND PROCEDURAL BACKGROUND

According to the uncontroverted facts, on January 8, 2016, E.H.'s father, Paul, was driving the family's van with his wife, Melissa, and their minor children—E.H., J.H., and I.H.—as passengers. The accident occurred when Raphael Sherman drove his vehicle through a red light and collided with a truck driven by Mario Madero. Sherman's collision caused Madero's truck to slide across the lanes of the highway and into the driver's side of Paul's van.

It is undisputed that Sherman was primarily at fault for the collision and the resulting bodily injuries to E.H. and her family. A passenger in Madero's truck, Denisse Lopez, died from her injuries, and all the occupants of E.H.'s family's van suffered bodily injuries to some extent. Sherman's insurance policy with GEICO provided bodily injury coverage limits of $25,000 per person and $50,000 per accident.

Paul and Melissa had an insurance policy with ACIIE. Under the policy, Paul and Melissa were named insureds and E.H. was an "'insured person.'" The policy had bodily injury coverage with limits of $50,000 per person and $100,000 per accident. The UIM coverage had limits of $50,000 per person and $100,000 per accident. It is not disputed by the parties that E.H. is entitled to some UIM coverage under the ACIIE policy and Kansas law.

After the filing of multiple claims, the injured parties in the accident agreed to a settlement with GEICO that divided Sherman's per accident limit of $50,000 between the claimants as follows. The Lopez heirs-at-law received $25,000. Paul received $10,000; Melissa received $500; I.H. received $200; J.H. received $2,300; and E.H. received $12,000. E.H. provided ACIIE with notice of the settlement under K.S.A. 40-284(f).

4

Later, Paul filed a claim with ACIIE for UIM benefits, and ACIIE paid Paul $40,000 on his claim. E.H. then filed a demand on ACIIE, claiming that she was entitled to $38,000 in UIM benefits. Melissa, I.H., and J.H. did not file claims for UIM benefits. ACIIE disputed the amount of UIM coverage available to E.H., which eventually resulted in E.H. filing a petition in the district court, claiming that ACIIE was in breach of contract and owed her $38,000 under the policy, plus interest, damages, and attorney fees. ACIIE answered and filed a counterclaim seeking declaratory judgment from the district court setting forth E.H.'s rights and its obligations under the policy.

Subsequently, the parties filed cross-motions for summary judgment on ACIIE's counterclaim. E.H. claimed she was entitled to $38,000 in UIM coverage based on the difference between her $12,000 pro rata share from the GEICO settlement and the $50,000 per person UIM limit. In response, ACIIE claimed the policy actually only had a total of $50,000 per accident UIM coverage available to all insureds. ACIIE relied on the following policy language:

"**COVERAGE E—UNINSURED/UNDERINSURED MOTORISTS COVERAGE**

**INSURING AGREEMENT—PART III**

"Subject to the Exclusions, *we* will pay damages which an ***insured*** is legally entitled to recover from the owner or operator of an ***uninsured motor vehicle*** or ***underinsured motor vehicle***, to the extent that the owner or operator is liable, because of ***bodily injury*** . . . .

. . . .

**"ADDITIONAL DEFINITIONS—PART III**

"*Underinsured motor vehicle* means a land motor vehicle or *trailer* of any type to which a *bodily injury* liability bond or policy applies at the time of the *auto accident* but its limits for *bodily injury* liability is less than the limit of liability for this coverage. . . .

. . . .

**"LIMITS OF LIABILITY—PART III**

. . . .

"The limit of liability shown in the declarations page for each *auto accident* for Uninsured Motorists Coverage, including Underinsured Motorists Coverage, is *our* maximum limit of liability for all damages arising out of and due to *bodily injury* to any number of *persons*, resulting from any one *auto accident*. . . . This is the most *we* will pay regardless of the number of:

"1.      *insureds* or *persons* involved . . . .

. . . .

"With respect to damages caused by an *auto accident* with an *underinsured motor vehicle*, the limit of liability shall be reduced by all sums paid because of *bodily injury* by or on behalf of *persons* or organizations who may be legally responsible. . . .

"With respect to damages caused by an *auto accident* with an *underinsured motor vehicle*, the maximum *we* will pay is the difference between the limit of liability shown in the declarations page for each *auto accident* and the limit of liability for each *auto accident* of any applicable *bodily injury* liability bonds or policies available to the owner or operator of an *underinsured motor vehicle*."

6

According to ACIIE, the policy provided its insureds with a maximum $50,000 UIM per accident limit based on subtracting GEICO's $50,000 per accident liability limit from its $100,000 UIM per accident limit. ACIIE argued that because Paul had already received $40,000 of UIM benefits, E.H. was entitled to only $10,000 in remaining UIM coverage. In response, E.H. argued ACIIE's limitation was void and unenforceable under K.S.A. 40-284(e).

After hearing argument, the district court granted E.H.'s motion and denied ACIIE's motion for summary judgment on the counterclaim. Relying on *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 430, 66 P.3d 822 (2003), the district court held E.H. was entitled to recover "the difference between her pro rata share of the primary liability [from GEICO] settlement and her total amount of damages up to the $50,000 per person UIM limit." Subject to E.H.'s ability to prove actual damages, the district court concluded she was entitled to receive up to $38,000 in available UIM coverage.

ACIIE timely appeals.

ANALYSIS

ACIIE's interlocutory appeal is properly before us pursuant to the district court's certification in accordance with K.S.A. 2018 Supp. 60-254(b).

A.      *Standard of Review*.

It is undisputed by the parties that the interpretation of the clear language of an insurance policy raises a question of law subject to de novo review. See *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 876, 317 P.3d 770 (2014). Additionally, "[a] de novo standard applies to an appellate court's review of a summary judgment order when

7

judgment is based upon uncontroverted facts and depends upon statutory interpretation." *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 1, 200 P.3d 1266 (2009).

> "The fundamental rule of statutory interpretation to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. Its intent is to be derived in the first place from the words used. When statutory language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there. [Citations omitted.]" *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

B.      *Statutory Requirements for UIM Insurance Coverage.*

K.S.A. 40-284(b) requires Kansas motorists to have UIM insurance coverage:

> "Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

In *O'Donoghue*, our Supreme Court found:

> "'The purpose of the legislation mandating the offer of uninsured and underinsured motorist coverage [in K.S.A. 40-284] is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. This coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorist who because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages. [Citation omitted.]

8

"'The uninsured and underinsured motorist statutes are remedial in nature. They should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arise out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured or underinsured motorist. . . . Other states have similarly found their uninsured and underinsured motorist statutes are remedial in nature and should be liberally construed to provide broad protection. [Citations omitted.]'" 275 Kan. at 437.

When reviewing a claim of underinsured motorist coverage under K.S.A. 40-284(b), a court must first determine whether UIM coverage exists. See *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, 143, 61 P.3d 691 (2003); *O'Donoghue*, 275 Kan. at 433-36. "When determining whether underinsured motorist coverage is available under the provisions of K.S.A. 40-284(b) in a given case, (1) the tortfeasor's liability coverage must be below the claimant's liability coverage, and (2) the claimant must have damages in excess of the tortfeasor's liability coverage." 275 Kan. 430, Syl. ¶ 3. Although E.H.'s actual damages have not yet been determined, the parties do not dispute that UIM coverage exists for E.H.

C.     *How Much UIM Coverage Exists?*

Under *O'Donoghue*, where UIM coverage exists, the next step requires a calculation of the insured's amount of available UIM coverage from the insurer.

"In calculating the amount of underinsured motorist benefits where the damages recovered from the tortfeasor are less than the total amount of actual damages because of multiple claims against the tortfeasor's liability insurance limits, the underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement with the tortfeasor and the insured's total amount of damages up to the insured's underinsured motorist limits." 275 Kan. 430, Syl. ¶ 6.

9

In summary, O'Donoghue received a $25,000 pro rata share under a settlement with multiple parties from the tortfeasor's liability policy that had bodily injury limits of $50,000 per person and $100,000 per occurrence. The district court granted O'Donoghue partial summary judgment, finding she could receive $75,000 in UIM coverage from her insurer, Farm Bureau, based on the difference between her $100,000 per person UIM limit and her $25,000 pro rata share from the settlement. O'Donoghue's UIM limits under the Farm Bureau policy were $100,000 per person and $300,000 per occurrence.

Relying on *Halsey*, Farm Bureau argued on appeal that O'Donoghue was entitled only to a maximum UIM coverage of $50,000, based on the difference of her $100,000 per person UIM limit and the driver's $50,000 per person liability limit. The *O'Donoghue* court rejected Farm Bureau's contention, finding that the *Halsey* court's limits-to-limits comparison dealt with the first question of whether coverage existed, not the issue of determining the amount of the UIM recovery available where UIM coverage exists. See 275 Kan. at 434. Applying the above holding, our Supreme Court held that "Farm Bureau is responsible for paying O'Donoghue $75,000; that is, the difference between O'Donoghue's pro rata share of the settlement from the tortfeasor ($25,000) and her total amount of damages up to her UIM limits ($100,000)." 275 Kan. at 441.

Despite our Supreme Court's holding in *O'Donoghue,* ACIIE argues we should look to *Halsey* and *Tilley v. Allied Property & Cas. Ins. Co.*, 33 Kan. App. 2d 923, 111 P.3d 188, *rev. denied* 280 Kan. 992 (2005), to apply a limits-to-limits analysis for determining the amount of available UIM coverage. But the *O'Donoghue* court specifically found that *Halsey* dealt with a different issue—determining whether coverage existed. "Unlike *Halsey*, the question involved in this case involves the amount of UIM coverage where that coverage exists. This question is one of first impression in this state, although two Kansas appellate decisions have touched on the amount of coverage in cases where it has been determined coverage exists." *O'Donoghue*, 275 Kan. at 434. More specifically, these decisions only address the first step—whether UIM coverage

10

exists—and do not move past that step to determine the amount of available UIM coverage. See *Halsey*, 275 Kan. at 143; *Tilley*, 33 Kan. App. 2d at 930. Thus, ACIIE's argument is unpersuasive.

ACIIE also argues that *O'Donoghue* is distinguishable from this case because (1) the district court's ruling puts the whole family—not just E.H.—in a better position and (2) this case involves two UIM claimants—Paul and E.H.—while O'Donoghue filed the sole UIM claim.

First, with regard to ACIIE's second point, the fact that two insureds have filed claims under ACIIE's UIM coverage does not distinguish this case from *O'Donoghue*. In fact, the *O'Donoghue* court expressly rejected a similar argument involving multiple claims against a single UIM policy in *Taylor v. Allstate Indemnity Co.*, 30 Kan. App. 2d 595, 43 P.3d 260 (2002). *O'Donoghue*, 275 Kan. at 441. Taylor was one of three passengers in William Ziegler's car, which collided with a car driven by Michael Stanturf. Stanturf had insurance through Progressive; Ziegler was insured through Allstate. The district court ordered multiple parties to divide the tortfeasor's $50,000 per accident liability limit for bodily injuries caused in automobile accident. Taylor then sued Allstate for UIM benefits. The Allstate policy had UIM limits of $50,000 per person and $100,000 per accident. Before Taylor filed his UIM claim, two other parties had already received claims that totaled $50,000 under the UIM coverage.

On appeal, the panel reviewed K.S.A. 40-284(b) and held that the amount of UIM coverage available to all claimants under the policy was calculated by subtracting the tortfeasor's total $50,000 per accident liability limit from the insured's $100,000 per accident UIM limit. The panel affirmed the district court's summary judgment for the UIM insurer that denied Taylor's claim upon finding that the two previous UIM $50,000 claims had exhausted the UIM coverage. *Taylor*, 30 Kan. App. 2d at 597. As the

11

*O'Donoghue* court expressly rejected the *Taylor* holding, we reject ACIIE's similar argument.

ACIIE's first argument—that the district court erred by finding that E.H. is entitled to claim up to $38,000 in UIM coverage because it permits the family to ultimately obtain a greater recovery than that allowed by the $100,000 UIM per occurrence limit—has some merit. ACIIE claims we should calculate the available UIM coverage for E.H. by adding together the family's total recovery from the tortfeasor and Paul's recovery from ACIIE of UIM benefits. According to this calculation, like the per person limit discussed in *O'Donoghue*, the $100,000 per occurrence limit of the UIM coverage must be reduced by the recovery for all those covered by the ACIIE UIM policy. This means that the family's total recovery from the tortfeasor—E.H.'s recovery of $12,000, Paul's $10,000, and E.H.'s mother's and siblings' recovery of $3,000—must be subtracted from the UIM coverage limit of $100,000, leaving only $75,000 of per occurrence UIM coverage available. When subtracting Paul's recovery of $40,000 from ACIIE as the UIM insurer, that leaves $35,000 available to E.H., less than the $38,000 that would otherwise be available when only considering ACIIE's $50,000 per person UIM limit applicable to E.H.

E.H. counters that the district court was correct in holding that she was entitled to coverage of up to $38,000. Admitting that Paul has collected $40,000 in UIM benefits, she argues that still leaves $60,000 in the per occurrence limit available for other insured persons to file UIM claims under the policy. As E.H.'s sole claim of $38,000 is well within this per occurrence limit and is also within her per person limit of $50,000, she argues that $38,000 is the correct calculation.

Unfortunately, we have no caselaw on this particular point to guide us. None of the cases cited or referred to us by the parties specifically address the situation we face here, namely the correct amount of UIM coverage available when the per person limit

12

conflicts with the per occurrence limit. Logically, ACIIE's approach—that we should apply the same rule with respect to the per occurrence UIM coverage limit as the per person UIM coverage limit—is consistent with *O'Donoghue*'s holding.

Our reading of the tea leaves in our Supreme Court's *O'Donoghue* opinion suggests that it would agree with ACIIE's position. First, the court emphasized that application of the limits-to-limits rule was incorrect for the very reason that K.S.A. 40-284 was designed to be liberally construed to make injured parties whole when claiming UIM benefits and that the amount of coverage available should be considered in light of the possibility that the tortfeasor had no coverage. See 275 Kan. at 440. Second, the court also discussed the problem of UIM claimants' damages exceeding the per occurrence coverage. It stated that, hypothetically speaking, applying a pro-rata share to multiple UIM claimants would be appropriate where the number of claimants with actual damages would exceed the per occurrence cap on UIM coverage. 275 Kan. at 435-36. However, the court also noted "'that UIM is first party coverage and, ordinarily, not all persons claiming against the tortfeasor will be claiming UIM benefits under the same policy.'" 275 Kan. at 436 (quoting *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 30 Kan. App. 2d 626, 633, 49 P.3d 22 [2002]).

Giving us pause is the fact that neither E.H.'s mother nor her siblings have made UIM claims. If they had, it would be easy to conclude that their $3,000 recovery from the tortfeasor would have to be subtracted from the per occurrence UIM coverage limit of $100,000. This would then force a pro-rata distribution as discussed in *O'Donoghue*. But there is nothing in the record that shows they made UIM claims. Nevertheless, the *O'Donoghue* court counsels us that we are to examine the amounts of UIM benefits available as if the tortfeasor had no coverage, and we are also required to deduct from the available UIM coverage amounts awarded by the tortfeasor. See 275 Kan. at 440.

13

Applying these rules to the present case, if we were to assume that the tortfeasor here had no coverage, then the family's only avenue of relief would have been to seek recovery through UIM coverage from ACIIE. Accordingly, Paul's $10,000 recovery, E.H.'s $12,000 recovery, and E.H.'s mother's and siblings' $3,000 recovery would have come from UIM coverage instead. When adding in Paul's $40,000 recovery of UIM benefits, E.H. would have up to $35,000 in available UIM coverage given the $100,000 per occurrence limit.

Additionally, if we take the *O'Donoghue* rule of subtracting the amount a claimant receives from the tortfeasor from the total amount of per person UIM coverage available and also apply it to the per occurrence UIM coverage limit, the total amount of UIM coverage available to E.H. would also be $35,000. As Paul has collected $10,000 from the tortfeasor and $40,000 in UIM benefits, E.H. has collected $12,000 from the tortfeasor, and E.H.'s mother and siblings have collected $3,000 from the tortfeasor, that leaves only $35,000 left under the UIM per occurrence limit despite the fact that E.H. would have $38,000 left under her per person UIM coverage limit. E.H.'s position wrongly applies only the per person UIM coverage limit without applying the per occurrence UIM coverage limit, potentially allowing the family to collect in excess of the UIM policy limits.

Applying *O'Donoghue* here, the district court's ruling improperly determined that the maximum amount of E.H.'s available UIM coverage is $38,000—subject to her ability to prove actual damages—as the difference between the total amount of her pro rata share of the settlement under the tortfeasor's policy ($12,000) from her total amount of damages up to the UIM per person limits ($50,000) because it ignores the UIM per occurrence limit of $100,000. When totaling all the claims paid to those covered by ACIIE's UIM coverage plus Paul's recovery of $40,000 under the UIM policy, only $35,000 remains available. The district court erred in holding otherwise.

14

D.    *ACIIE's UIM Policy Must Be Consistent with State Law.*

Finally, ACIIE argues that its policy and K.S.A. 40-284 allow it to reduce the maximum per accident limit of $100,000 by the tortfeasor's per accident limit of $50,000, making the maximum per accident limit in UIM coverage available for all insureds $50,000. Because ACIIE argues that K.S.A. 40-284 permits a reduction in UIM coverage, we examine the impact of K.S.A. 40-284(e) on the policy.

In general, K.S.A. 40-284(e) lists the permissible exclusions and limitations on uninsured motorist and underinsured motorist coverage. See, e.g., *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 730, 811 P.2d 1121 (1991) (uninsured); *Bardwell v. Kester*, 15 Kan. App. 2d 679, 681, 815 P.2d 120 (1991) (underinsured). The provisions of K.S.A. 40-284

> "'are mandatory insofar as they stipulate what insurance policies in this state must
> contain. The provisions of the statute are to be considered a part of every automobile
> policy in this state. [Citation omitted.]' *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13
> Kan. App. 2d 630, 632-33, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989)[, *abrogated on
> other grounds by Cashman v. Cherry*, 270 Kan. 295, 13 P.3d 1265 (2000)]. An
> automobile policy is controlling only 'to the extent that it does not conflict with or
> attempt to diminish or omit the statutorily mandated coverage.' 13 Kan. App. 2d at 633."
> *Russell v. Farmers Ins. Co.*, 38 Kan. App. 2d 290, 294, 163 P.3d 1266 (2007).

Thus, "[u]nless authorized by statute, provisions of an insurance policy which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by K.S.A. 1990 Supp. 40-284 are void and unenforceable." *Allied*, 248 Kan. 715, Syl. ¶ 1.

ACIIE relies on the following policy provision:

15

"With respect to damages caused by an *auto accident* with an *underinsured motor vehicle*, the maximum *we* will pay is the difference between the limit of liability shown in the declarations page for each *auto accident* [$100,000] and the limit of liability for each *auto accident* of any applicable *bodily injury* liability bonds or policies available to the owner or operator of an *underinsured motor vehicle* [$50,000]."

But K.S.A. 40-284(b) provides that UIM coverage should enable the insured "to recover from the insurer the amount of damages for bodily injury or death *to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage*." (Emphasis added.) Therefore, E.H. should be able to collect damages for her bodily injuries from ACIIE to the limits of the UIM coverage, here, $50,000 per person and $100,000 per accident. ACIIE's provision that allows a reduction in the maximum UIM per accident limit by subtracting the tortfeasor's per accident limit impermissibly limits or dilutes the UIM coverage mandated by K.S.A 40-284(b). In addition, ACIIE presents no argument that its policy provision fits under one of the permissible exclusions or limitations in K.S.A. 40-284(e). "Where an appellant fails to brief an issue, that issue is waived or abandoned." *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, Syl. ¶ 2, 294 P.3d 287 (2013). As a result, we find that the policy provision is void and unenforceable under K.S.A. 40-284(e).

In conclusion, the district court improperly declared that the maximum amount of E.H.'s available UIM coverage is $38,000. For the reasons we have explained, $35,000 is the proper limit. Accordingly, we reverse the district court's determination on this point and remand for further proceedings consistent with this opinion.

Reversed and remanded with directions.