The Honorable Kenny A. Wilk State Representative, 42nd District 715 Cottonwood Drive Lansing, Kansas 66043
Dear Representative Wilk:
You request our opinion regarding whether the Kansas Tax Increment Finance Act[1] authorizes use of proceeds from bonds issued under that Act to pay certain financial advisory fees, bond counsel fees and bond placement fees.
We have set forth and discussed the purpose and general process of the Tax Increment Finance (TIF) Act in recent opinions.[2] Generally speaking, a city is authorized "to issue special obligation bonds in one or more series to finance the undertaking of any redevelopment project. . . ."[3]
Additionally, a city is authorized "to issue full faith and credit tax increment bonds to finance the undertaking of any redevelopment project . . ."[4] with certain exceptions. The proceeds of these bonds may be used to pay redevelopment project costs, as defined in K.S.A. 2005 Supp. 12-1770a, to implement the redevelopment project plan.[5]
K.S.A. 2005 Supp. 12-1770a provides in part:
 "(q) 'Redevelopment project costs' means those costs necessary to implement a redevelopment project plan
or a bioscience development project plan, including costs incurred for:
 "(1) Acquisition of property within the redevelopment project area;
 "(2) payment of relocation assistance pursuant to a relocation assistance plan as provided in K.S.A. 12-1777, and amendments thereto;
"(3) site preparation including utility relocations;
"(4) sanitary and storm sewers and lift stations;
 "(5) drainage conduits, channels, levees and river walk canal facilities;
 "(6) street grading, paving, graveling, macadamizing, curbing, guttering and surfacing;
 "(7) street light fixtures, connection and facilities;
 "(8) underground gas, water, heating and electrical services and connections located within the public right-of-way;
 "(9) sidewalks and pedestrian underpasses or overpasses;
 "(10) drives and driveway approaches located within the public right-of-way;
"(11) water mains and extensions;
"(12) plazas and arcades;
"(13) parking facilities;
 "(14) landscaping and plantings, fountains, shelters, benches, sculptures, lighting, decorations and similar amenities; and
 "(15) related expenses to redevelop and finance the redevelopment project, except that for a redevelopment project financed with special obligation bonds payable from the revenues described in subsections (a)(1)(D) and (a)(1)(G) of K.S.A. 12-1774, and amendments thereto, such expenses shall require prior approval by the secretary of commerce.
 "Redevelopment costs shall not include costs incurred in connection with the construction of buildings or other structures to be owned by or leased to a developer, however, the `redevelopment project costs' shall include costs incurred in connection with the construction of buildings or other structures to be owned or leased to a developer which includes an auto race track facility. In addition, for a redevelopment project financed with special obligation bonds payable from the revenues described in subsections (a)(1)(D) and (a)(1)(G) of K.S.A. 12-1774, and amendments thereto, redevelopment project costs shall not include:
 "(1) Fees and commissions paid to real estate agents, financial advisors or any other consultants who represent the businesses considering locating in a redevelopment district;
"(2) salaries for local government employees;
 "(3) moving expenses for employees of the businesses locating within the redevelopment district;
 "(4) property taxes for businesses that locate in the redevelopment district;
"(5) lobbying costs; and
 "(6) a bond origination fee charged by the city pursuant to K.S.A. 12-1742, and amendments thereto."[6]
We begin by reviewing rules used by the courts in construing statutes and legislative intent:
 "The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. However, where the intent is not clearly expressed, courts are not limited to consideration of the language employed but may properly look into the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effect the statute may have under various suggested constructions."[7]
In our opinion, the intent of the Legislature is clearly expressed in the statute in this regard. Generally, "redevelopment costs" include any "costs necessary to implement a redevelopment project plan" and "related expenses to redevelop and finance the redevelopment project."[8] However, "for a redevelopment project financed with special obligation bonds payable from the revenues described in subsections (a)(1)(D) and (a)(1)(G) of K.S.A. 12-1774" redevelopment project costs shall not include, among other things, fees and commissions paid to "financial advisors or any other consultants who represent the businesses considering locating in a redevelopment district" and any "bond origination fee charged by the city pursuant to K.S.A.12-1742. . . ."[9] Thus, fees paid to financial consultants for services that are determined necessary to implement a redevelopment project are generally permissible costs for which proceeds of the bonds may be utilized, but if the redevelopment project is financed with special obligation bonds payable from the state and local sales, use and transient guest taxes listed in K.S.A. 2005 Supp. 12-1774(a)(1)(D) and (a)(1)(G), payment of such fees from the bond proceeds would not be permissible if the financial advisor or consultant involved represents the business or businesses considering locating in the redevelopment district. Likewise, fees paid for bond counsel services and for bond placement that are determined necessary to implement a redevelopment project are generally permissible costs for which proceeds of the bonds may be utilized, but any bond origination fee charged by the city pursuant to K.S.A. 12-1742, and amendments, may not be paid for using such bond proceeds.
A review of the amendments made to this statute in the 2005 Session of the Legislature supports this reading of K.S.A. 2005 Supp. 12-1770a(q). The italicized portions of the following excerpt represent the language added by the 2005 Legislature; the struck language represents what was removed from the statute by the 2005 Legislature:
 "(q) `Redevelopment project costs' means those costs necessary to implement a redevelopment project plan or a bioscience development project plan, including, but not limited to costs incurred for:
. . . .
 "(15) all related expenses to redevelop and finance the redevelopment] project, except that for a redevelopment project financed with special obligation bonds payable from the revenues described in subsections (a)(1)(D) and (a)(1)(G) of K.S.A. 12-1774, and amendments thereto, such expenses shall require prior approval by the secretary of commerce.
 "Redevelopment project costs shall not include costs incurred in connection with the construction of buildings or other structures to be owned by or leased to a developer, however, the `redevelopment project costs' shall include costs incurred in connection with the construction of buildings or other structures to be owned or leased to a developer which includes an auto race track facility or is in a redevelopment district including some or all of the land and buildings comprising a state mental institution closed pursuant to section 2 of chapter 219 of the 1995 Session Laws of Kansas. In addition, for a redevelopment project financed with special obligation bonds payable from the revenues described in subsections (a)(1)(D) and (a)(1)(G) of K.S.A. 12-1774, and amendments thereto, redevelopment project costs shall not include:
 "(1) Fees and commissions paid to real estate agents, financial advisors or any other consultants who represent the businesses considering locating in a redevelopment district;
. . . .
 "(6) a bond origination fee charged by the city pursuant to K.S.A. 12-1742, and amendments thereto."[10]
 Clearly, the added procedures and exceptions apply only insituations where special obligation bonds are payable fromrevenues described in K.S.A. 2005 Supp. 12-1774(a)(1)(D) and(a)(1)(G), and only as further limited by the statutory languageused.
 In conclusion, fees paid to financial consultants for servicesthat are determined necessary to implement a redevelopmentproject are generally permissible costs for which proceeds offull faith and credit tax increment bonds may be utilized, but ifthe redevelopment project is financed with special obligationbonds payable from the state and local sales, use and transientguest taxes listed in K.S.A. 2005 Supp. 12-1774(a)(1)(D) and(a)(1)(G), payment of such fees from such bond proceeds would notbe permissible if the financial advisor or consultant involvedrepresents the business or businesses considering locating in theredevelopment district. Likewise, fees paid for bond counselservices and for bond placement that are determined necessary toimplement a redevelopment project are generally permissible costsfor which proceeds of the bonds may be utilized, but any bondorigination fee charged by the city pursuant to K.S.A. 12-1742,and amendments, may not be paid for using such bond proceeds.
 Sincerely,
 Phill Kline Attorney General
 Julene L. Miller Deputy Attorney General
 PK:JLM:jm
[1] K.S.A. 12-1770 et seq.
[2] Attorney General Opinions No. 2004-6, 2005-14.
[3] K.S.A. 2005 Supp. 12-1774(a)(1). See also K.S.A.12-1770.
[4] K.S.A. 2005 Supp. 12-1774(b)(1).
[5] K.S.A. 2005 Supp. 12-1774(e).
[6] Emphasis added.
[7] O'Donoghue v. Kansas Farm Bureau Mut. Ins. Co., Inc.,275 Kan. 430, 432-33 (2003) (internal citations omitted).
[8] K.S.A. 2005 Supp. 12-1770a(q) and (q)(15).
[9] K.S.A. 2005 Supp. 12-1770a(q)(1) and (q)(6).
[10] L. 2005, Ch. 132, § 1(q) (emphasis and strike-through inoriginal).